ENVIROCLEAN, INC., Enviroclean Acquisition
Corporation, and Biomedical Waste Systems, Inc. *v.*
ARKANSAS POLLUTION CONTROL AND ECOLOGY
COMMISSION

92-1290                                              858 S.W.2d 116

Supreme Court of Arkansas
Opinion delivered July 19, 1993

99

*The Rose Law Firm, A Professional Association*, by: *William H. Kennedy III* and *Brian Rosenthal*, for appellants.

*Steve Weaver, Anne Roberts Bobo*, and *William A. Eckert III*, for appellee.

DONALD L. CORBIN, Justice. This is an appeal from an order of the St. Francis Circuit Court affirming Minute Order 92-27 of the Arkansas Pollution Control and Ecology Commission (the Commission). Minute Order 92-27 required the termination of an air permit issued to appellant EnviroClean, Incorporated (EnviroClean). EnviroClean now appeals the circuit court's decision to this court, which has jurisdiction of appeals from the Commission. Ark. Sup. Ct. R. 1-2(a)(4). The question presented for our review is whether the Arkansas Department of Pollution Control and Ecology (ADPC&E) correctly construed and ap-

plied the terms of the permit and the statutes it is charged with enforcing when it revoked EnviroClean's permit. We find no error in the administrative proceedings below and affirm the revocation of the air permit.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

The air permit, Permit No. 462-IR, was originally issued by ADPC&E on May 30, 1990, to EnviroClean and allowed the construction of a medical waste incinerator to be operated at the rate of 250 pounds per hour. On February 7, 1991, pursuant to EnviroClean's request for an increased capacity, ADPC&E issued a new permit, Permit No. 462-IR-1, allowing incineration at the rate of 1,500 pounds per hour. On its face, the permit contained several conditions, of which the following is at issue in this case:

> 12. This permit is issued to the applicant alone. It may not be transferred to another party. In the event of the sale of the permitted facility, this permit shall expire and the purchaser must apply for a new permit.

The dispute giving rise to this case began when 100% of the stock in EnviroClean was sold and an accompanying change in the corporation's directors and officers occurred. Originally, 100% of EnviroClean's stock was owned by Al Johnson and it was through Johnson's efforts that ADPC&E issued EnviroClean the permit. On March 28, 1991, Johnson entered an agreement whereby he sold 100% of the stock in EnviroClean to EnviroClean Acquisition Corporation (EAC). EAC is an Arkansas corporation formed for the purpose of acquiring the stock in EnviroClean and is wholly owned by BioMedical Waste Systems, Incorporated (BioMed), a Delaware corporation. Also on March 28, 1991, all of the officers of EnviroClean resigned their positions and Gene J. Frisco, director and president of both BioMed and EAC, was authorized to act as sole director for EnviroClean until the next stockholder meeting. Documents relating to the sale of stock included references to a transfer of assets and to the fact that BioMed would acquire EnviroClean's permit as a result of the purchase of stock in EnviroClean.

As a result of the foregoing change in ownership and control

of EnviroClean, ADPC&E issued a notice of permit expiration to EnviroClean on August 9, 1991, revoking the permit for violation of its condition prohibiting a transfer of the permitted facility. ADPC&E later issued an amended notice of permit expiration on November 26, 1991, adding allegations that EnviroClean obtained the permit through misrepresentations and failure to fully disclose information relating to ownership of the permit and the permitted facility. EnviroClean appealed the notices of termination and waived a hearing. The case was submitted to the Commission's hearing officer who recommended that ADPC&E's decision to revoke and terminate the permit be upheld. The Commission adopted the findings of the hearing officer in its Minute Order 92-97. EnviroClean then appealed the Commission's order to the Circuit Court of St. Francis County which affirmed the Commission's order.

EnviroClean now appeals to this court asserting two broad points of error. First, EnviroClean claims the circuit court erred in affirming the revocation of the permit because ADPC&E's decision is not supported by substantial evidence and is contrary to the law of corporations. Second, EnviroClean claims the circuit court erred in affirming the revocation of the permit because ADPC&E's decision was arbitrary, capricious, and an abuse of discretion; made upon unlawful procedure in excess of statutory authority; and violates constitutional rights and statutory provisions.

## STANDARD OF REVIEW

We have recently set out the standard of review in an appeal from the Arkansas Pollution Control and Ecology Commission:

> Review of administrative decisions, both in the Circuit Court and here, is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. Administrative action may be regarded as arbitrary and capricious only when it is not supportable on any rational basis. It has been said that the appellate court's review is directed, not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specializa-

tion, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies.

*In Re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992) (citations omitted).

■ The requirement that the Commission's decision not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. *Id.* To be invalid as arbitrary or capricious requires that the Commission's decision lacks a rational basis or relies on a finding of fact based on an erroneous view of the law. *Id.* To determine whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wright* v. *Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

In addition, despite EnviroClean's assertion to the contrary, when we review ADPC&E's permitting decisions, which are decisions ADPC&E is charged with administering pursuant to the police powers of the state and Ark. Code Ann. § 8-4-203 (Repl. 1991), we are reviewing determinations made by an executive agency and the doctrine of separation of powers requires that determination to be reviewed with judicial deference to ADPC&E's expertise and specialization. *Arkansas Comm'n on Pollution Control & Ecology* v. *Land Developers, Inc.*, 284 Ark. 179, 680 S.W.2d 909 (1984).

## I. SUBSTANTIAL EVIDENCE / ERROR OF LAW

EnviroClean argues the decision to revoke its permit is not supported by substantial evidence and is contrary to the concepts of corporate law. Specifically, EnviroClean contends that the sale of 100% of its stock did not result in a transfer of the permit. In support of this argument, EnviroClean relies on *Atkinson* v. *Reid*, 185 Ark. 301, 47 S.W.2d 571 (1932) and *Red Bird Realty Co.* v. *South*, 96 Ark. 281, 131 S.W. 340 (1910). *Atkinson* stated that the distinct identity of a corporation, separate from its shareholder, is not lost due to the fact that a single shareholder owns all of the corporation's stock. *Red Bird Realty* held that title to corporate property remains with the corporation regardless of

who owns the stock. EnviroClean's argument continues with the assertion that ADPC&E erroneously pierced the corporate veil in concluding the permit was transferred. ADPC&E responds with the claims that there is substantial evidence to support its actions without applying concepts of corporate law, and alternatively, that the form of the corporate entity may be disregarded on the facts of this case.

We agree with the foregoing rules of corporate law enunciated in *Atkinson* and *Red Bird Realty*, regarding the separate ownership of property by a corporation and its shareholders. However, corporate law is not the only area of law to be considered here. To the contrary, this is a case in which corporate law collides head-on with administrative law and its underlying public policies.

ADPC&E administers the Arkansas Water and Air Pollution Control Act, which has a legislative intent of maintaining the purity of the air resources of the state so that the least possible injury should be done to human, plant or animal life consistent with the public enjoyment of the state and the state's economic and industrial well-being. Ark. Code Ann. § 8-4-301 (Repl. 1991). As the agency charged with administering the Water and Air Pollution Control Act, ADPC&E is given authority to issue, modify, and revoke permits regulating the emission of air pollutants. Ark. Code Ann. §§ 8-4-203, -304 (Repl. 1991). ADPC&E may revoke a permit for violation of any condition of the permit or when the permit is obtained by misrepresentation or failure to disclose fully all relevant facts. Ark. Code Ann. § 8-4-204 (Repl. 1991). Moreover, Ark. Code Ann. § 8-4-217(a)(3) (Repl. 1991) makes it unlawful to violate any provision of a permit.

This court has stated that in special circumstances the court will disregard the corporate facade when the form has been illegally abused. *Black and White, Inc.* v. *Love*, 236 Ark. 529, 367 S.W.2d 427 (1963). Giving the evidence its strongest probative force in favor of the administrative agency as we are required to do, *Arkansas Contractors Licensing Bd.* v. *Butler Constr. Co.*, 295 Ark. 223, 748 S.W.2d 129 (1988), our review of the record reveals there is substantial evidence that BioMed and EnviroClean sought to abuse the corporate form to achieve a

transfer of the permitted facility in violation of paragraph 12 of the permit. The prohibition on transfers as stated in paragraph 12 of the permit enables ADPC&E to know who is responsible for the operational decisions of the permitted facility and thereby enables ADPC&E to prevent harm to the environment and the public. Thus, there is substantial evidence to support ADPC&E's disregarding the corporate facade and concluding the permitted facility was transferred. In other words, there is substantial evidence to support the revocation of EnviroClean's permit.

The record reveals EnviroClean was originally owned by Johnson as the sole shareholder. Upon the sale of EnviroClean stock, the four officers of EnviroClean resigned their offices and waived any rights to EnviroClean's assets or permits. BioMed and EAC had common officers and shareholders and after the purchase of EnviroClean, the officers and shareholders of Bio-Med and EAC were common with EnviroClean. BioMed and EAC had the same office, telephone number, and address in Boston, Massachusetts. Two of BioMed's shareholders, on behalf of BioMed, furnished all of the funds in acquiring EnviroClean.

That BioMed was deceptive in its efforts to obtain a permit issued to another corporation (i.e., EnviroClean as it existed prior to the change in ownership and control) is evident in several of the documents surrounding the sale of EnviroClean to BioMed. The parties contemplated a sale of a permit with incinerator capacity of 1,000 - 1,500 pounds per hour. EnviroClean only possessed a permit with a capacity of 250 pounds per hour. Thereafter, EnviroClean made application for increased capacity and the resulting permit was issued. The parties then contemplated a sale of stock in EnviroClean as well as the sale of the only assets of EnviroClean, which were described as the permit for 1,500 pounds per hour and an option to purchase 2.3 acres of real estate. BioMed had the option to purchase the real estate for the site of the incinerator and "to acquire the stock of EnviroClean (and thereby to acquire the permit held by EnviroClean)." The documents also indicated the transaction included "complete control of the construction and operation by BioMed under the permit previously obtained by EnviroClean."

That EnviroClean and BioMed sought to circumvent the permitting process and obtain a permit it could not otherwise obtain is also evident in the prospectus BioMed registered with

the Securities and Exchange Commission for its initial public offering of common stock. The prospectus states in pertinent parts:

> BioMedical Waste Systems, Inc. is a development stage company organized to develop, construct, and operate medical waste incinerators and transfer stations. . . . On May 31, 1991 [,] the Company's wholly owned subsidiary, EnviroClean Acquisition Corporation purchased the stock of EnviroClean, Inc., a company formed in 1990 to open and operate an 18 ton per day incineration facility in St. Francis County, Arkansas. (References in the Prospectus to the Company include the Company and its subsidiary EnviroClean Acquisition Corp.) EnviroClean has not commenced construction of any facilities and currently has no operations. However, it has been granted a permit by the Arkansas Department of Pollution Control and Ecology to construct and operate an incineration facility. . . .
>
> . . . .
>
> The Company, through the acquisition of EnvironClean [sic], has obtained a permit from the Arkansas Department of Pollution Control and Ecology for the construction of its first incinerator. . . . In addition, the permit for the St. Francis facility are [sic] subject to continued review by the Director of the Arkansas Department of Pollution Control and Ecology, and no assurance can be given that the permit will not be modified or even revoked in the future.

The evidence also reveals that EnviroClean and BioMed sought to abuse the corporate form by misrepresenting the change in ownership and control to ADPC&E. On behalf of EnviroClean, Johnson wrote to the chief of ADPC&E's air division and requested ADPC&E's opinion as to the effect of a sale of stock on the permit. ADPC&E assured EnviroClean that a sale of stock would have no effect on the permit. However, EnviroClean's request did not fully disclose the particular sale of 100% of the stock and the accompanying change in control of EnviroClean that actually occurred in this case; rather, Johnson's written request referred to a mere "change in shareholders."

Without question, there was more than a simple sale of stock

going on here. Even more significant, however, is the fact that the change in complete ownership and complete control was under negotiation at the very moment in time EnviroClean requested ADPC&E's opinion as to the effect of a "change in shareholders" and at the time Enviroclean was granted the increase in capacity of its permit. Equally significant is the intent of BioMed to acquire EnviroClean's existing permit, rather than to apply for a permit itself as required by paragraph 12 of the permit in question.

The foregoing evidence of a transfer of the permitted facility from EnviroClean to BioMed along with the failure to disclose information as to the change in ownership and control of EnviroClean is substantial evidence in support of ADPC&E's revocation of the permit. Our conclusion that a transfer of the permit and permitted facility occurred is a conclusion we reach because of our required deference to an administrative agency's determination within its proper police power. We therefore hold there is substantial evidence to support ADPC&E's actions in revoking EnviroClean's permit and that no error of law was committed in the revocation.

## II. ARBITRARY AND CAPRICIOUS / DUE PROCESS / ESTOPPEL

EnviroClean's second broad assignment of error is that the revocation of the permit was arbitrary, capricious, and an abuse of discretion; made upon unlawful procedure in excess of ADPC&E's statutory authority; and made in violation of statutory provisions and EnviroClean's constitutional due process rights. EnviroClean also includes a claim that ADPC&E should be estopped from revoking the permit.

EnviroClean argues ADPC&E engaged in a selective, arbitrary, and capricious action against EnviroClean because ADPC&E had not previously required notice of a change in a permittee's stockholders. EnviroClean also claims that because there is no regulation requiring the disclosure of a change in ownership or control of a permittee, ADPC&E had no discretion to revoke EnviroClean's permit and this court should not give any deference to ADPC&E's revocation.

We have already pointed out that air permitting deci-

sions are within ADPC&E's police power and statutory authority and that such decisions of an executive agency are thus entitled to judicial deference on appeal. *Land Developers, Inc.*, 284 Ark. 179, 680 S.W.2d 909. We need not decide whether the Commission's revocation was arbitrary or capricious since it automatically follows that where substantial evidence is found, a decision cannot be classified as unreasonable or arbitrary. *Wright*, 311 Ark. 125, 842 S.W.2d 42.

■ EnviroClean argues its due process rights were violated in three respects: (1)there was no promulgated rule or regulation requiring the disclosure of a change in ownership or control of a permittee; (2) the existing rules and regulations are void for vagueness; and (3) because ADPC&E's amended notice of revocation for misrepresentation and failure to fully disclose information amounted to a post-revocation attempt to supplement the initial basis for the revocation — a transfer in violation of the permit. These claims are moot. The permit itself prohibited transfer of the permitted facility and we have just held there was substantial evidence to support the finding that a transfer did occur in violation of the permit. Therefore, no rule or regulation is required to authorize the revocation. We do not decide moot issues. *Arkansas Dep't. of Human Servs.* v. *M.D.M. Corp.*, 295 Ark. 549, 750 S.W.2d 57 (1988).

■ Also under this broad assertion of error, EnviroClean includes a claim that because ADPC&E assured EnviroClean that a sale of stock would not affect the permit, ADPC&E is estopped from revoking the permit. EnviroClean relies on *Foote's Dixie Dandy* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980) for the proposition that state agencies may be subject to estoppel in certain situations. However, EnviroClean overlooks that part of *Foote's Dixie Dandy* stating that "[m]en must turn square corners when they deal with the government." *Foote's Dixie Dandy*, 270 Ark. at 824, 607 S.W.2d at 327 (quoting *Rock Island, Arkansas & Louisiana R.R.* v. *United States*, 254 U.S. 141, 143 (1920)). The hearing officer found that estoppel was not available to EnviroClean because it was not completely truthful with ADPC&E. We cannot say the hearing officer erred in making this finding.

## SUMMARY

As the agency charged with enforcing the public policy of the

state to protect the environment, and the public's health, safety, and welfare, ADPC&E must be able to know the true identity of the persons or entities which own and control its corporate applicants and permittees. There was substantial evidence to support ADPC&E's conclusion that EnviroClean transferred its permitted facility to BioMed, as those terms are used in and prohibited in the permit. Again, given this substantial evidence, we cannot say ADPC&E acted arbitrarily or that it abused its discretion in revoking EnviroClean's permit.

The judgment is affirmed.

BROWN, J. concurs.