ARKANSAS DEPARTMENT OF HUMAN SERVICES,
Division of Children and Family Services,
Special Nutrition Program *v.*
ARKANSAS CHILD CARE CONSULTANTS, INC.

94-289                                            889 S.W.2d 24

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*Richard B. Dahlgren*, DHS Office of Chief Counsel, for appellant.

*Howell, Trice & Hope, P.A.*, by: *William H. Trice III*, for appellee.

TOM GLAZE, Justice. Arkansas Child Care Consultants, Inc. (ACCCI) was an enrolled sponsor for the Child and Adult Care Food Program (CACFP) for fiscal year 1991-92 when it learned of another lunch food program named the Summer Food Service Program (SFSP). On April 13, 1992, ACCCI submitted an application to be a sponsor in the SFSP as well, but in doing so, it supplied false information to the qualifying agency, Special Nutrition Program (SPN) of the State Department of Human Services. Because of the false information, SPN, by letter dated May 7, 1992, denied ACCCI's application, listing the reasons and concluding the misrepresentations constituted a "serious deficiency" under the federal law.[1] SPN informed ACCCI of its right to appeal the denial and enclosed a copy of the appeal procedures. ACCCI received this correspondence on May 11, 1992. On June 2, 1992, SPN further notified ACCCI that its 1991-92 CACFP contract would be terminated effective June 30, 1992 because its SFSP application had been found seriously deficient. Under 7 CFR § 226.6(c), ACCCI had fifteen days within which it could chal-

---

[1]Under 7 CFR § 225.6(b)(11), the state agency shall not approve the application of any applicant sponsor which submits fraudulent information or documentation.

lenge by appeal SPN's May 7 denial decision, but it failed to do so. Actually, ACCCI had fifty days (May 11 to June 30) to correct or explain the false information it had given SPN, but it never did so within that period.

ACCCI did ultimately appeal SPN's termination of ACCCI's participation in the 1991-92 CACFP program, and on August 7, 1992, an administrative hearing was held on that issue. ACCCI's executive director testified and basically acknowledged that false information had been supplied on its SFSP application, but blamed it on the lack of time within which ACCCI had to complete the application. She also claimed officials told her an appeal of ACCCI's termination would be "in vain." SPN's official testified that SPN had supplied ACCCI with the appeal procedures, stating federal regulations required such information when the state denies an application or termination of an institution.

By order dated August 25, 1992, the hearing officer found, among other things, that (1) ACCCI admitted it had supplied false information on its SFSP application, (2) ACCCI's SFSP application had been denied by letter dated May 7, 1992, (3) ACCCI had been informed of its right to appeal the May 7 denial which it did not do, and (4) ACCCI had been notified that federal regulation, particularly 7 CFR 226.6(c), required ACCCI's termination in the 1991-92 CACFP program because of the "serious deficiency" found in ACCCI's SFSP application.[2]

ACCCI appealed to circuit court the hearing officer's August 25, 1992 decision upholding the agency's denial of ACCCI's participation in CACFP's 1991-92 program. The circuit court agreed ACCCI had been notified of its rights to appeal the May 7 SFSP termination. However, the court concluded that SPN unlawfully terminated ACCCI before ACCCI had an opportunity to submit corrected information. The court was wrong.

By its own finding, the circuit court determined ACCCI

[2]By letter dated October 12, 1992, SPN also denied ACCCI's CACFP application for fiscal year 1992-93, citing the May 7, 1992 denial as the reason. We need not address ACCCI's appeal to circuit court of the 1992-93 denial, since ACCCI did not first exhaust its administrative remedies. Even if ACCCI had exhausted its administrative remedies, SPN's denial of ACCCI's 1992-93 CACFP application would be upheld for the same reasons we uphold SPN's denial of its 1991-92 CACFP contract.

had been notified of SPN's May 7, 1992 denial of ACCCI's SFSP application, and the reasons for the denial. The court also found ACCCI had been sufficiently informed as to its right to appeal. As previously mentioned, ACCCI was provided fifty days, not just the fifteen days under 7 CFR § 226.6(c) within which to appeal, to explain or correct the false information made a part of its SFSP application; nonetheless, it failed either to appeal or correct the information. Clearly, ACCCI was given a reasonable opportunity to correct its problems before it was officially terminated for being seriously deficient. *See* 7 CFR 226.6(c). If ACCCI had appealed the SFSP denial, it could have continued, under appeal procedures, to participate in the lunch program while the appeal process was pending. Because ACCCI did not appeal, the doctrine of res judicata, which forbids reopening of matters once judicially determined by competent authority, applied to the agency's decision. *See Mohawk Tire & Rubber Co.* v. *Brider*, 259 Ark. 728, 536 S.W.2d 126 (1976); *Given* v. *R. D. Hall Tank Co.*, 10 Ark. App. 12, 660 S.W.2d 947 (1983). In other words, SPN's finding of "serious deficiency" and its factual underpinnings became conclusive when ACCCI failed to appeal the May 7, 1992 denial.

Even though ACCCI could have been precluded by law from explaining the falsehoods or "serious deficiencies" contained in its SFSP application at the August 7, 1992 hearing on its CACFP denial, ACCCI still was afforded that opportunity by the administrative hearing officer when that officer permitted ACCCI's executive director to testify. The executive director thoroughly related why false information was provided. After that hearing, the hearing officer found the information on ACCCI's SFSP application was false and unverified, and further found the executive director had listed food service sites in ACCCI's application which she admitted ACCCI had not visited. In sum, ACCCI had every opportunity to explain why its SFSP application was submitted with false information, and it failed to give a valid or convincing explanation. Certainly, the record reflects the agency decision was not arbitrary or capricious in holding against ACCCI as it did. *Arkansas Bank & Trust Co.* v. *Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994); *Douglass* v. *Dynamic Enter., Inc.*, 315 Ark. 575, 869 S.W.2d 14 (1994).

As another reason for reversing the hearing officer's decision, the circuit court held that false information submitted

in an application in one food service program cannot be construed as a "serious deficiency" which disqualifies an institution in another program. Again, the trial court was in error.

Under 7 CFR § 226.6(c),[3] the state agency (SPN) shall terminate the program agreement with any institution which it determines to be seriously deficient. The state agency must then notify the Federal Food and Nutrition Service (FNS) that the state denied an institution's application or participation in a program and that seriously deficient institution is placed on a list of ineligible institutions. A state agency shall not enter into an agreement with an ineligible institution *and shall terminate any participating institution on that list.* "Serious deficiencies" under 7 CFR § 226.6(c) is defined to include, but is not limited to, (1) noncompliance with applicable bid procedures and contract requirements of federal child nutrition program regulations and (2) the submission of false information to the state agency.

In the present case, ACCCI's misrepresentations or falsehoods constituted disqualifying "serious deficiencies" under federal law. Again, although given ample opportunity, ACCCI never sufficiently explained or corrected those deficiencies. Consequently, it became an ineligible institution which could not participate in *any* federal child nutrition program — at least until FNS and the state agency determine otherwise. 7 CFR § 226.6(c).

For the reasons above, we reverse the circuit court and reinstate the agency's decision.

CORBIN and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. The issue presented for our review is whether appellant correctly construed and applied the terms of the applicable federal regulations, in particular, 7 C.F.R. § 226.6(c) (1992) ("Regulation"), when it terminated its annual contract with appellee for the fiscal year ended September 30, 1992, pursuant to which appellee was participating as a local sponsor of the federally-funded and locally-administered child nutrition program entitled Child and Adult Care Food Program ("CACFP").

---

[3]Comparable provisions for the SFSP lunch program are found in 7 CFR § 225.1 *et seq.*

The rules governing judicial review of decisions of administrative agencies are the same for both the circuit and appellate courts. *Arkansas Alcoholic Bev. Control Bd.* v. *Muncrief,* 308 Ark. 373, 825 S.W.2d 816 (1992). Our review is not directed toward the circuit court but toward the decision of the agency, recognizing that administrative agencies, by specialization, insight through experience, and more flexible procedures, are better equipped than courts to determine and analyze legal issues affecting those agencies. *Enviroclean, Inc.* v. *Arkansas Pollution Control & Ecology Comm'n,* 314 Ark. 98, 858 S.W.2d 116 (1993). Our review is limited in scope; we will uphold the administrative decision if it is supported by substantial evidence and is not arbitrary, capricious or characterized by an abuse of discretion. *Arkansas St. Bank Comm'r* v. *Bank of Marvell,* 304 Ark. 602, 804 S.W.2d 692 (1991). An administrative decision is invalid as arbitrary or capricious if it lacks a rational basis or relies on a finding of fact based on an erroneous view of the law. *Enviroclean, Inc.,* 314 Ark. 98, 858 S.W.2d 116. To determine whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.; Wright* v. *Arkansas State Plant Bd.,* 311 Ark. 125, 842 S.W.2d 42 (1992).

In this case, by letter dated June 2, 1992, appellant notified appellee that the CACFP contract was terminated effective June 30, 1992. The letter informed appellee that, on the basis of the Regulation, appellant was required to terminate its program agreements with any institution that had been declared seriously deficient in any federal child nutrition program, then specifically identified that the serious deficiency was based on the false information submitted by appellee in its April 1992 application to participate as a local sponsor in a different federal child nutrition program entitled the Summer Food Service Program ("SFSP") for the summer of 1992.[1] On June 15, 1992, appellee timely

---

[1] Both CACFP and SFSP are programs created under the auspices of the National School Lunch Act, and are regulated by the federal Department of Agriculture at the national level and by the Arkansas Department of Human Services at the state level. The SFSP application required appellee to list proposed food service sites and to certify, by signing the application, that those sites had been visited by appellee. In processing appellee's signed SFSP application, appellant determined that: (a) the list of food

appealed the termination decision at the agency level in accordance with federal regulation and later sought judicial review of the final agency decision in accordance with the Ark. Code Ann. § 25-15-212 (Repl. 1992).

On appeal, the trial court reversed the August 25, 1992 final agency order affirming the termination decision. The trial court found that, with respect to the termination of the CACFP contract, appellant had acted in error on two grounds: first, by erroneously interpreting the Regulation to require termination of the CACFP contract on the basis of the SFSP application denial, thereby acting in excess of its administrative authority; and second, by acting upon an unlawful procedure by not providing petitioner every reasonable opportunity, as required by the Regulation, to correct the deficiencies prior to termination. On appeal to this court, appellant argues both of those trial court findings are erroneous. Contrary to the conclusion of the majority, I agree with the trial court as to the second ground for its reversal of the final agency order and, therefore, would affirm the trial court judgment.

The language of the Regulation, in pertinent part, is as follows:

(c) *Denial of applications and termination of institutions.* The State agency shall not enter into an agreement with any applicant institution which the State agency determines to have been seriously deficient at any time in its operation of any Federal child nutrition program. . . . The State agency shall terminate the program agreement with any institution which it determines to be seriously deficient. However, the State agency shall afford an institution every reasonable opportunity to correct problems before terminating the institution for being seriously deficient. . . . Serious deficiencies, which are grounds for disapproval

---

service sites contained incorrect information concerning the site locations, contact persons and telephone numbers, and (b) appellee had in fact not visited all the proposed sites listed. Appellant disapproved the SFSP application by letter dated May 7, 1992 informing appellee that none of the food service sites could be identified and that "[s]ubmission of false information in this agency is a SERIOUS deficiency," enclosing information regarding appeals procedures. Appellee did not appeal the denial of its SFSP application.

of applications and for termination include, but are not limited to, any of the following:

. . . .

(2) The submission of false information to the State agency[.]

The trial court concluded appellant failed to comply with the Regulation's requirement that "the State agency shall afford an institution every reasonable opportunity to correct problems before terminating the institution for being seriously deficient."

I note initially that the August 25, 1992 final agency order contained no express finding of fact or conclusion of law regarding the adequacy of the pre-termination proceedings prescribed by the Regulation. A review of the evidence presented at the administrative hearing reveals that the hearing officer questioned Mr. Grady Maxwell, appellant's program manager, on this point, as follows:

> MS. SPAULDING [the hearing officer]: Ok, uh, what does that say, over here that somebody's highlighted, it says something about uh, State agency shall afford the institution every reasonable opportunity to correct problems before terminating the institution from being seriously deficient. I just want to know how did you all determine this?

> MR. MAXWELL: If you, if she had been declared deficient in the area of the child and adult care food program. We're going to say this is the problem, alright? If it is a fraudulent information as I, as we told her in the letter from the summer food service application, these sites aren't there. I mean, those telephone numbers belong to someone else. These cites [sic] aren't here. I don't know how you can correct fraud. So that was in another program. After she is declared seriously deficient in that program, then the basis of this

> MS. SPAULDING: If she was declared seriously deficient in the summer food program?

> MR. MAXWELL: That's correct.

. . . .

MR. MAXWELL: And then at that point, when she sends that in we send her a letter saying you have 10 days to appeal, or you have, you know in the appeal procedure here, I believe the summer is 7 days, I don't know, I'll have to look at the appeal procedure. I believe it's 7 days for the summer. Ms. Cobb [appellee's administrator] is correct at that time that she got that letter I was on vacation and I did go to New Orleans the following week. I did not talk to her and I have no personal knowledge of her conversation with Mr. Harrison [an officer in appellant's office], but the appeal procedures is like a 7 or 8 page booklet that tells her to contact the hearing officer you know that's outside of our purview. It's completely separate.

Appellant's argument on this point, I conclude, is that the appeals procedures available with respect to the denial of the SFSP application accorded appellee reasonable opportunity to correct its problems prior to termination of its CACFP contract.

In this case, the problems to be corrected were the submission of false information regarding the proposed SFSP food service sites and the false certification that each such site had been visited by appellee's representatives. Certainly, these deficiencies could have been corrected by appellee. However, the evidence introduced at the hearing indicated that appellant never contacted appellee about the false information in the SFSP application during the application review process, did not return the SFSP application to appellee for corrections or clarification, did not provide technical assistance to appellee in completing the SFSP application, and did not otherwise provide appellee with an opportunity to correct the false information prior to denying the SFSP application.

The evidence presented at the administrative hearing also indicated that appellant did not expressly inform appellee that a consequence of its failures to correct the false information submitted in the SFSP application and to appeal the denial of that application would be termination of its CACFP contract. Based on the record, appellee's right to appeal the SFSP application denial expired on May 18, 1992, 7 days after appellee's receipt on May 11, 1992 of appellant's letter denying the application. Disputed testimony was offered on the issue of whether appellee

understood or should have understood that expiration of its right to appeal the denial of the SFSP application meant that the serious deficiency had been finally determined, and that termination of the CACFP contract was then mandatory. Although appellant provided to appellee the standard information regarding the SFSP appeals procedures, including a copy of the Regulation, it is obvious that those rules do not present clear guidance in this matter. In any event, the evidence showed that the first time appellant plainly informed appellee of the connection between its failure to appeal the denial of the SFSP application and the termination of its existing CACFP contract was appellant's advice to appellee, by letter dated June 2, 1992, that the CACFP contract *was cancelled* effective the end of that month.

Based upon my review of the record, I would hold that appellant did not afford appellee "every reasonable opportunity to correct problems before terminating institution for being seriously deficient" in the language of the Regulation. Consequently, appellant's action in terminating the CACFP contract did not comport with that requirement of the Regulation, and, therefore, was made in error.

For these reasons, I respectfully dissent.

BROWN, J., joins in this dissent.