Manda FRANKLIN *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES, Division of Economic & Medical Services, and Tom Dalton, in His Official Capacity

94-676                                         892 S.W.2d 262

Supreme Court of Arkansas
Opinion delivered February 13, 1995

*David J. Manley*, for appellant.

*Tami Harlan,* Arkansas Department of Human Services, for appellees.

DONALD L. CORBIN, Justice. Appellant, Manda Franklin, appeals a judgment of the Pulaski County Circuit Court affirming the decision of appellee, Arkansas Department of Human Services, Division of Economic and Medical Services, to deny appellant's application to participate in the Elder Choices Program, a federally authorized program, locally administered by appellee, which permits the state to provide non-institutional long-term care services as an alternative to institutionalization to qualifying elderly individuals. Appellant raises three points for reversal: (1) substantial rights of hers were prejudiced by the state's failure to comply with statutory and federal regulatory notice requirements respecting program eligibility; (2) the application denial was arbitrary, capricious or characterized by an abuse of discretion; and (3) the application denial was not supported by substantial evidence of record. Jurisdiction of this appeal is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3). We reverse.

The facts of this case commenced on June 24, 1992 when appellant, then aged 86 years, submitted her program application. The application was summarily denied by appellee as stated in its form No. EMS-704, "Decision for Nursing Home Placement," because appellant "did not appear to meet criteria." Appellant requested administrative review of that initial denial decision, and on September 30, 1992, an evidentiary hearing was conducted before the Arkansas Department of Human Services, Office of Appeals and Hearings (Department). On November 19, 1992, the Department issued its decision that the denial of appellant's application was correct and in accordance with current Medical Services Policy, stating:

> It has been determined that [appellant] does not meet the level of care requirement for nursing home admission in order to qualify for the Elder Choices Program. Ms. Franklin is ambulatory with a cane or walker, she maintains her bladder problem with a pad, and she is continent of bowel. Ms. Franklin is capable of preparing breakfast and capable of using frozen meals.

From this final agency action, appellant, through legal coun-

sel, filed her petition for judicial review by the circuit court. Written arguments were filed with the circuit court by both parties, but no additional testimony was taken nor was a judicial hearing conducted. The circuit court found the decision to deny the application was not arbitrary, capricious or an abuse of discretion, and, on March 17, 1994, entered its order of affirmance. This appeal was taken therefrom.

Appellant first raises the procedural argument that appellee denied substantial rights of hers by failing to inform her, prior to the administrative hearing, of the exact nature of the medical eligibility criteria for the Elder Choices Program, and, to inform appellant, at any time in the administrative proceedings, of the legal authority or statement of law upon which its decision would be made. On appeal to this court, appellant argues these failures violated her right to due process of law, and her rights under Ark. Code Ann. § 25-15-208(a) to an administrative hearing after reasonable notice, and under 42 C.F.R. § 431.210(b) and (c) to a statement of reasons, including specific regulation, supporting the denial of her program application.

We summarily dispose of this argument which appellant concedes she did not raise at the administrative level. This court has repeatedly held it will not set aside an administrative determination upon a ground not presented to the agency because to do so would deprive the agency of the opportunity to consider the matter, make its ruling and state the reasons for its action. *Riverways Home Care* v. *Arkansas Health Servs. Comm'n*, 309 Ark. 452, 831 S.W.2d 611 (1992); *Arkansas Cemetery Bd.* v. *Memorial Properties, Inc.*, 272 Ark. 172, 616 S.W.2d 173 (1981). Thus appellant's failure to raise this argument before the administrative agency precludes its consideration by this court on appeal. *Wright* v. *Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

Appellant's second and third arguments, respectively, are that the denial decision (1) was arbitrary, capricious, or characterized by an abuse of discretion, and (2) was not supported by substantial evidence of record. We have held that if the agency action was supported by substantial evidence, then it follows automatically that the agency decision cannot be classified as arbitrary or capricious, *Id.; see Enviroclean, Inc.* v. *Arkansas Pollu-*

*tion Control & Ecology Comm'n*, 314 Ark. 98, 858 S.W.2d 116 (1993). Consequently, we first consider appellant's argument that the application denial was not supported by substantial evidence.

██ The rules governing judicial review of decisions of administrative agencies by both the circuit and appellate courts are the same. *Arkansas Alcoholic Bev. Ctrl. Bd.* v. *Muncrief*, 308 Ark. 373, 825 S.W.2d 816 (1992). Our review is not directed toward the circuit court but toward the decision of the agency recognizing that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Enviroclean*, 314 Ark. 98, 858 S.W.2d 116. If we find the administrative decision is supported by substantial evidence and is not arbitrary, capricious or characterized by an abuse of discretion, we uphold it. *Arkansas St. Bank Comm'r* v. *Bank of Marvell*, 304 Ark. 602, 804 S.W.2d 692 (1991).

Appellant appeared *pro se* at the administrative hearing where she testified and introduced into evidence four documents: a statement from Dr. Robert J. Wilkerson regarding her general medical condition, a statement from Dr. J.J. Magie regarding her visual condition, a statement from pharmacist Jim Reidmueller listing her prescription medications during the 1991-92 period, and a personal statement summarizing her medical and economic need for assistance. Ida Ludy, appellant's friend and neighbor, and Freda Brooks, a registered nurse with the Arkansas Department of Health, also testified about appellant's medical and economic need for assistance. Barbara Flowers, Service Representative, attended the hearing on behalf of appellee. Appellee presented no evidence at the hearing.

The Department's ultimate findings of fact and conclusions of law were:

### FINDINGS OF FACT

1. A summary of the Administrative Hearing was submitted to the Utilization Review Committee [URC] of the Office of Long Term Care [OLTC] on October 2, 1992.

2. Form EMS-704, Decision for Nursing Home Placement, was received in the Appeals and Hearings Office on November 17, 1992.

3. According to the EMS-704, [appellant] does not meet the medical eligibility criteria for nursing home placement.

4. It was determined that [appellant] is ambulatory with a cane or walker, and that she is capable of preparing breakfast and frozen meals.

5. It was determined that [appellant] maintains her bladder problem with a pad, and that she is continent of bowel.

## CONCLUSIONS OF LAW

1. [Appellant's] Medical Services Policy 2076 states that Section 2176 of the Omnibus Budget Reconciliation Act of 1981, Public Law 97-35, allows states to provide non-institutional long term care services, as an alternative to institutionalization, to elderly individuals who would require an Intermediate Level of Care [ILC] if in an institution.

2. Medical Services Policy 2076.1 states that to be considered for the [Elder Choices Program], an individual must meet certain eligibility requirements, including ILC. Individuals must be classified as requiring an ILC if in an institution, as determined by the URC/OLTC.

3. Medical Services Policy 2076.3 states that the URC assessment results will be routed . . . via Form EMS-704.

4. The ILC Guidelines, Degree of Incapacity Criteria for Medicaid Recipients in Nursing Homes, issued by OLTC, establishes parameters for the exercise of professional judgment in the determination of the appropriate level of care for a patient; in addition to mobility, feeding, and toileting, the following factors are considered: patient's age, diagnosis, mental status, physician plan of care and recommendation for type of nursing care required, and the patient's overall general condition.

5. Medical Services Policy 3110 states that a[n] LTC Facility is an institution which provides medically necessary care and services 24 hours per day on a long term basis.

In addition, our review of the administrative record shows that appellant lived alone in a rural area of Conway County; she owned and was able to use a telephone. She suffered from high blood pressure, arthritis, kidney problems, and glaucoma, and took daily medication for these conditions. Appellant's house-cleaning, laundry and other tasks were performed by an aide who came to appellant's home two days each week for two hours each day. The "local aging agency" provided appellant with frozen meals which appellant heated in her stove, sometimes requiring assistance to safely operate her stove. Appellant bathed in a bathtub only when another person was present in her house because she could not get out of the bathtub unassisted. Neighbors and members of appellant's church provided her with transportation, shopping, and wrote appellant's checks to pay her bills. Appellant was visited annually by her daughter, a California resident, who had provided a metal porch railing for appellant's house to facilitate appellant's ability to leave her home.

Dr. Wilkerson's written statement introduced at the evidentiary hearing opined that appellant had several medical problems including moderately severe osteoarthritis, hypertension, severe glaucoma which severely affected her vision, and a history of a small cerebrovascular accident in 1982; he concluded appellant was limited in her ability to perform several activities of daily living due to arthritis and poor vision. Dr. Magie's written statement opined that appellant was legally blind, that she was sufficiently visually handicapped to require additional home assistance and that her present assistance should not be cut. Nurse Brooks testified that appellant needed in-home help for all daily activities.

██ To determine whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wright*, 311 Ark. 125, 842 S.W.2d 42. When reviewing the evidence, we give it its strongest probative force in favor of the agency. *Beverly Enterprises-Arkansas, Inc.* v. *Arkansas Health Servs. Comm'n*, 308 Ark. 221, 824 S.W.2d 363 (1992). Appellant's burden, then, in order to establish an absence of substantial evidence, is to show that the proof before the Department was so nearly undisputed that fair-minded persons could not reach its conclusion.

*Id.* The issue is not whether the evidence supports a contrary finding, but whether it supports the finding that was made. *Id.*

We find appellant has carried her burden of proof with respect to this argument. As recited above, the Department concluded, as a matter of law, that its Medical Services Policy identified *mobility, feeding, and toileting*, in addition to certain other enumerated factors, as the parameters for determining appellant's level of care requirement for nursing home admission in order to qualify for the Elder Choices Program. The Department's findings of fact, which it reiterated in its ultimate statement approving the denial of appellant's application, included the statements that appellant was capable of preparing breakfast and frozen meals (*"feeding"*), and that appellant maintained her bladder problem with a pad and was continent of bowel (*"toileting"*). Upon review, we conclude these findings of fact are not borne out by the evidence of record.

With respect to appellant's feeding ability, we note initially that the record established that the home-delivered frozen meals, when warmed, constituted appellant's only cooked food, with the exception of breakfast which appellant testified she tried to prepare alone. Appellant testified she had to cook or try to because she had no one to cook for her.

In examining the record for evidence supporting the finding that appellant was capable of preparing these frozen meals, the following colloquy, which occurred at the administrative hearing, is noteworthy:

> HARDIN [Hearing Officer]: Okay let me turn this over. We are continuing with Ms. Franklin's hearing. Ms. Franklin what else about yourself can you think of to tell me today?
>
> MS. FRANKLIN: What about myself?
>
> HARDIN: Yes ma'am anything about yourself, about your activities, things you can or cannot do.
>
> MS. FRANKLIN: Sometimes I fix my food and sometimes it burns.
>
> HARDIN: You burn your food sometimes.
>
> MS. FRANKLIN: Yes it burns.

HARDIN: How come it burns Ms. Franklin, can you not see how high the flame is?

MS. FRANKLIN: The blaze I guess is too high and I discover that it was high.

HARDIN: How often does that happen?

MS. FRANKLIN: Well pretty often.

Appellant's testimony was corroborated by that of Ms. Ludy who stated: "It is impossible for [appellant] to see that well, which makes it dangerous for her to be trying to warm up things. She has no microwave oven so she has to use her regular range which lets the heat come up in her face." Ms. Ludy further testified:

MS. LUDY: [I] want to add this too, that I am her neighbor and I am over there quite a bit. Mandy has glaucoma and she — you will see in the documentation that we brought for this hearing that she should not be over heat. Just like last week when I was over there her left eye was swollen something terrible. Sometimes it's swollen under it and then a ridge down to her upper lip. This time it was just one, so we know that being over heat with her eye condition.

The evidence presented at the hearing mandates the conclusion that appellant suffered a profound visual impairment which severely restricted her ability to perform fundamental tasks, including cooking. Further, the evidence of record is undisputed that appellant was clearly dependent upon her existing support network of the local aging agency, neighbors, church members, and family for the accomplishment of such basic tasks, including cooking. On this record, we fail to find relevant evidence that a reasonable mind might accept as adequate to support the finding that appellant was capable of preparing her frozen meals.

With respect to appellant's toileting ability, the only evidence of record was appellant's testimony that she received medication for her kidneys which, she opined, she would be required to take for the remainder of her life, together with the following colloquy at the hearing:

HARDIN: Ms. Franklin are you able to get in and out of bed by yourself?

MS. FRANKLIN: Well yeah I get up there. I have to just sit on the side of the bed and then get myself together. Sometimes my legs be so stiff I can't get up you know — get up and go right on to the bathroom, I have to sit there until I let my legs straight — they be so stiff.

HARDIN: Do you have to get up a lot during the night to go to the bathroom Ms. Franklin?

MS. FRANKLIN: Well, sometimes — sometimes I do and then again I don't.

HARDIN: Do you have trouble controlling your bladder and or your bowels Ms. Franklin?

MS. FRANKLIN: Well, yeah I have pretty good trouble. Sometimes though my kidneys won't wait until I get to the bathroom.

HARDIN: Does that happen very often?

MS. FRANKLIN: Pretty often.

HARDIN: Do you wear any type of special pad or anything because of that Ms. Franklin?

MS. FRANKLIN: Yeah I wear a pad.

HARDIN: Is that a problem at night when you are sleeping?

MS. FRANKLIN: No sometimes I have to wear them in the day time, it don't be night — sometimes my kidney just won't act right and it will be down before you know it.

On this record, we fail to find relevant evidence that a reasonable mind might accept as adequate to support the determination that appellant maintained her bladder problem with a pad as well as was continent of bowel.

We are persuaded, after reviewing the evidence with its strongest probative force in favor of appellee, that the evidence does not support the findings of fact that were made with respect to appellant's feeding and toileting abilities, nor the ultimate conclusion drawn, in part, from those facts: that appellant did not qualify for the Elder Choices Program. In sum, we find the denial

decision was not supported by substantial evidence of record.

In light of our holding that appellee's decision was not supported by substantial evidence of record, we need not address appellant's final argument that the decision was arbitrary, capricious, or characterized by an abuse of discretion. Ark. Code Ann. § 25-15-212(h)(5) (Repl. 1992).

For the foregoing reasons, we reverse the order of the circuit court and remand for entry of an order consistent with this opinion.

DUDLEY, NEWBERN and GLAZE, JJ., concur.

BROWN, J., dissents.

DAVID NEWBERN, Justice, concurring. Manda Franklin has argued that the decision of a division of the Arkansas Department of Human Services (DHS) deprived her of substantial rights on the basis of a decision which was arbitrary and capricious and which was not supported by substantial evidence. The majority opinion concludes the factual determinations made by DHS, and thus the decision that Ms. Franklin was not entitled to the benefits of the Elder Choices Program, were not supported by substantial evidence. The facts disputed are those contained in paragraphs 4. and 5. in DHS's finding of fact:

> 4. It was determined that [Ms. Franklin] is ambulatory with a cane or walker, and that she is capable of preparing breakfast and frozen meals.

> 5. It was determined that [Ms. Franklin] maintains her bladder problem with a pad, and that she is continent of bowel.

While there may be a dispute as to whether Ms. Franklin is capable of preparing meals, it is undisputed that she is doing it. It is also undisputed that she is ambulatory to the extent of being able to get out and work in her garden, for example. Nor is there any question that she is able to get out of bed and use the bathroom. The majority opinion makes a convincing argument that she is able to do these things only to a degree, but that is not the issue we should be addressing here. If it were, we should affirm as we reverse an agency's determination under the law only if there

is not *any* substantial evidence in support of it. *Douglass* v. *Dynamic Enterprises*, 315 Ark. 575, 869 S.W.2d 14 (1994).

The problem in this case is that we do not know the standards to be applied. The brief for DHS refers to 42 USCS § 1396 which provides criteria for determining when one is "functionally disabled," but that term does not appear in the findings of fact or conclusions of law issued in Ms. Franklin's case. We have been given no means of determining how that term relates to eligibility for the Elder Choices Program.

We can read in DHS Medical Services Policy 2076.1 that eligibility for the Elder Choices Program is dependent on eligibility of the applicant for intermediate long-term care (ILC). The majority appears to accept at face value paragraph 4. of DHS's conclusions of law:

4. The ILC Guidelines, Degree of Incapacity Criteria for Medicaid Recipients in Nursing Homes, issued by OLTC, establishes parameters for the exercise of professional judgment in the determination of the appropriate level of care for a patient; in addition to mobility, feeding, and toileting, the following factors are considered: patient's age, diagnosis, mental status, physician plan of care and recommendation for type of nursing care required, and the patient's overall general condition.

State agencies are required to file their rules and regulations with the Secretary of State and the Arkansas State Library. Ark. Code Ann. § 25-15-204(d) (Repl. 1992). In neither the Supreme Court Library nor the State Library have we been able to find the ILC guidelines. Assuming we could find them, if all they provide is "parameters" for deciding whether a patient is entitled to ILC, and if the "parameters" consist only of a list of words, such as "mobility, feeding, and toileting," I could not base a decision on such a regulation.

It is no wonder the DHS decision given Ms. Franklin stated only that her application "does not appear to meet criteria." The agency would have had great difficulty stating any criteria.

In *Davis* v. *Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979), we discussed a vague statute concerning agency pursuits of terminations of parental rights and concluded it left "the discretion

vested in judges so broad that arbitrary and discriminatory parental terminations are inevitable." In *Alcoholic Beverage Control Div. v. R.C. Edwards Dist. Co.*, 284 Ark. 336, 681 S.W.2d 356 (1984), we said the same of an agency regulation we concluded to be so vague as to bestow "arbitrary powers" on the agency.

Our focus in this case should not be on the sufficiency of the evidence but on the fact that the regulation on which DHS relied to deny Ms. Franklin's application, assuming it is accurately quoted in the agency's conclusions of law, is so vague that any decision based upon it must be arbitrary. A decision can be nothing but arbitrary when it is based upon no discernible standard.

This case should indeed be remanded to the Circuit Court for entry of orders consistent with our conclusion that the agency decision in Manda Franklin's case was arbitrary.

The majority opinion is objectionable to me because, without an insistence that standards be set and followed, DHS will remain free to make decisions like the one now before us. While we probably will reverse any such decision, who knows how many of them will be made with respect to applicants who either will not or cannot appeal. It seems essential to me that we should reverse this case on the ground that it is an arbitrary decision due to the lack of a standard upon which Ms. Franklin, to say nothing of this or any other Court, could rely. I concur in the result only.

DUDLEY, J., joins in this concurrence.

TOM GLAZE, Justice, concurring. I agree with the majority court and write only to say that, in utilizing the criteria of mobility, feeding, and toileting required by DHS, Ms. Franklin met the appropriate level of care entitling her to the benefits available under the ElderChoices Program. It is my strong view that DHS was arbitrary and capricious in applying that standard or criteria to the facts in this case.

To qualify for the ElderChoices Program, the applicant must require the level of care provided in a nursing home, if ElderChoices services were not available. The Program is to provide services that would permit an elderly person to stay in his or her own dwelling when that person would otherwise be placed in a

nursing home. The Program was obviously intended for elderly people like Ms. Franklin.

After a hearing, DHS found that Ms. Franklin is (1) ambulatory with a cane or walker, (2) she maintains her bladder problem with a pad, and (3) she is continent of bowel. It also found her capable of using frozen meals. The evidence simply fails to support DHS's findings.

The only testimony taken in this matter came from Ms. Franklin and her witnesses. That testimony was forwarded to a Walter H. O'Neal, M.D., Medical Director for Economic and Medical Services, who in turn sent a memo (not abstracted) to James Barnhill, Director of Appeals and Hearings. O'Neal stated Ms. Franklin did not meet the medical criteria and, based on Dr. O'Neal's opinion, other appeals by Ms. Franklin were unsuccessful. Of course, O'Neal was not at the hearing, and I find his decision stating Ms. Franklin does not meet the medical necessity criteria for the ElderChoices waiver incredible. The following excerpts are indicative of the evidence showing that Ms. Franklin cannot feed herself and that she is incontinent.

Ms. Franklin:

The Senior Citizens Center brings me meals to last seven days. They bring them and put them in the refrigerator.

* * *

Sometimes I fix my food and sometimes it burns. It burns because I can't see how high the blaze is.

Ms. Ludy:

Ms. Faulkner's meals are cooked and brought into the Center and put on T.V. trays. That really isn't sufficient for Ms. Franklin's main meal. Sometimes she puts two meals together.

* * *

Ms. Franklin has glaucoma.

\* \* \*

It is impossible for her to see that well, which makes it dangerous for her to be trying to warm things up. She has no microwave oven so she has to use her regular range which lets the heat come up in her face.

\* \* \*

Ms. Franklin:

I have trouble controlling my bladder and my bowels.[1] Sometimes my kidneys won't wait until I get to the bathroom. That happens pretty often. I wear a pad because of my kidneys, sometimes during the day. Sometimes my kidney just won't act right and it will be down before you know it.

The following evidence clearly reveals that Ms. Franklin's mobility is impossible without assistance because of her blindness and physical impairments.

Ms. Franklin:

I have arthritis. It affects me sometimes in my legs and all in the hips and goes up into my neck.

\* \* \*

I have been using [a cane] for a long time.

\* \* \*

I am able to get in and out of bed by myself. I have to sit on the side of the bed and then get myself together. Sometimes my legs are so stiff I can't get up and go right on to the bathroom.

\* \* \*

I am completely dependent on others to take me places.

---

[1]The hearing officer's summary of evidence erroneously states that Ms. Franklin reported she had no bowel problems.

\* \* \*

I use a walker around the house.

\* \* \*

Ms. Ludy:

She (Ms. Franklin) does need a three-prong cane for being out in public, but she needs a walker, too.

Ms. Brooks (registered nurse):

Ms. Franklin has difficulty seeing, she is partially blind, she also has trouble with arthritis and she has to use a walking cane and also a walker to get around.

In addition to the foregoing testimony, the following medical evidence was introduced that not only corroborates Ms. Franklin's serious and diminishing health problems, but also reflects her unquestioned need for home assistance for her to live.

Dr. Robert J. Wilkerson:

Ms. Franklin has severe medical problems including moderately severe osteoarthritis, hypertension, severe glaucoma which is severely affecting her vision and a history of a small cerebrovascular accident.

\* \* \*

Dr. J. J. Magee:

Ms. Franklin is sufficiently visually handicapped to require additional home assistances . . . and certainly the amount of assistance should not be cut. Ms. Franklin fits the description of legal blindness and should be given as much home assistance as is available from DHS.

In conclusion, I point out that DHS offered no evidence to rebut the proof Ms. Franklin introduced, and DHS's decision finding Ms. Franklin ineligible for assistance benefits under the ElderChoices Program totally ignores the evidence. If Ms. Franklin fails to meet the requirements of the program based on the evidence presented here, then no elderly person can. It makes me

question how many of Arkansas's elderly people have qualified for such benefits. Regardless, given a fair reading of the testimony and proof here, no substantial evidence exists to support DHS's decision. In my view, DHS's decision is wholly arbitrary and capricious and borders on the absurd.

ROBERT L. BROWN, Justice, dissenting. I agree with much of what is stated in Justice Newbern's concurring opinion. The standard for determining eligibility for the Elder Choices program is elusive. We cannot determine what it is from the record, and it is clear that Ms. Franklin did not know what criteria were at issue at her hearing. Indeed, her emphasis for qualifying for the program was her legal blindness — not mobility, feeding, or toileting. DHS, on the other hand, decided eligibility based on the latter factors. Without knowing precisely what the standard is, it is difficult for me to decide whether it is vague or not.

Assuming a DHS standard does exist for eligibility in Elder Choices, Ms. Franklin should be apprised of that standard before any hearing and given the opportunity to meet the criteria. That clearly did not occur in this case at the first hearing.

Accordingly, I would reverse and remand to circuit court with directions that a new hearing be conducted. If no standard exists for determining eligibility or if the standard is impermissibly vague, then a conclusion that DHS is acting arbitrarily is inescapable.