ARKANSAS DEPARTMENT of HUMAN SERVICES
Division of Economic and Medical Services *v.* Idell WILSON
and Farmers Bank & Trust Company, as Trustee of the Idell
Wilson Irrevocable Trust

95-905                                                913 S.W.2d 783

Supreme Court of Arkansas
Opinion delivered January 22, 1996

152

*Richard B. Dahlgren*, DHS Senior Attorney for appellant.

*Bell Law Firm*, by: *Rebecca A. Jones*, for appellees.

ROBERT H. DUDLEY, Justice. On appeal, the circuit court ruled that the Department of Human Services arbitrarily determined that Idell Wilson was ineligible for benefits under the Arkansas Medical Assistance Program. We affirm the circuit court's ruling.

On August 1, 1986, Idell Wilson executed an irrevocable trust agreement and created the Idell Wilson Trust. The agreement designated the Farmers Bank and Trust Company as the trustee. Mrs. Wilson contributed in excess of $20,000 to the principal of the trust. Under the terms of the trust, the trustee is to manage and invest the trust property and collect and receive the income. After deducting the expenses of the administration of the trust, the trustee is to distribute the net income to the grantor, Idell Wilson. The trustee is to determine the times at which to distribute the income, but is required to at least make quarterly distributions. The trust is irrevocable and is to terminate upon the death of Idell Wilson. At that time, the principal and the accumulated income are to be distributed to Bobby Don Wilson, Jackie Wilson Mooney, Mary Jo Wilson Rogers, and Jimmy Porter Wilson. The trust contains the following paragraph:

> 8. *Irrevocability of Trust.* This Trust shall be irrevocable, and the Grantor hereby expressly waives all rights and powers, whether alone or in conjunction with others and regardless of when and from what source she may have acquired such rights or powers, to alter, amend, revoke, or terminate the Trust, or any of the terms of this Agreement, in whole or in part.

Mrs. Wilson entered a nursing home on March 5, 1993, and subsequently applied to the Department of Human Services for Medicaid long-term care benefits. Medicaid is a governmental program designed to provide assistance to the aged, blind, and disabled and to dependent children whose incomes or resources are not sufficient to meet the costs of necessary medical care and services. Mrs. Wilson was approved to receive long-term care benefits. At the time of the application for long-term care benefits, the principal of the trust amounted to $21,733.57. The

application was approved with benefits to commence on March 1, 1993.

On May 18, 1994, appellant Department of Human Services Division of Economic and Medical Services sent a notice of action to Mrs. Mooney, Mrs. Wilson's niece who had cared for her. The notice stated that Mrs. Wilson's case would be closed effective May 28, 1994, and gave the following reason:

> New policy has come out to relook at all trust funds held by Long Term Care patients. We were exempting these funds as a resource, but now we are having to count the total value. The amount of her trust was verified 4-26-94, in the amount of 21,733.57. This is over the resource limit allowed for Long Term Care, therefore her case will be closed.

Mrs. Mooney requested a hearing about the closing of Mrs. Wilson's case.

An administrative hearing was held on August 15, 1994. A service representative testified that the Office of Chief Counsel of the Department had reviewed Mrs. Wilson's trust and determined that the trust should be considered a resource, which caused Mrs. Wilson to exceed the resource limit. The Office of Chief Counsel sent a notice of its decision to the case worker who made the decision to take adverse action on Mrs. Wilson's case.

Mrs. Mooney testified that the trust was created from the sale of farm equipment and from a certificate of deposit. The trust was established with money owned solely by Mrs. Wilson. Mrs. Mooney testified that Mrs. Wilson was in good health for a woman of her age at the time she set up the trust. Mrs. Mooney testified that the individuals designated to receive the principal of the trust after Mrs. Wilson's death are her nieces and nephews.

The hearing officer entered a final order determining that the county office acted correctly and in accordance with the current Medical Services Policy when it proposed the closure of Mrs. Wilson's long-term care case.

The trustee timely filed a petition for judicial review in the

circuit court. It was uncontested that the quarterly income from the trust is a resource available to Mrs. Wilson. The contest involved only the Department's ruling that the principal of the trust constituted a resource available for Mrs. Wilson's care and maintenance. The circuit court determined that the agency's decision was arbitrary and granted the trustees' petition. The Department raises one point on appeal.

The Department asserts that the agency correctly analyzed the "Idell Wilson Trust" in light of current laws and rules and regulations governing eligibility for Medicaid benefits and determined that the trust posed a bar to eligibility. The argument is without merit.

The agency erroneously interpreted and applied Ark. Code Ann. § 28-69-102. In addition, the agency erred in applying its regulation, and in applying the case of *Arkansas Dep't of Human Servs.* v. *Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993) to the facts of this case.

 The standard of review of decisions by administrative agencies is well established:

> The rules governing judicial review of decisions of administrative agencies by both the circuit and appellate courts are the same. Our review is not directed toward the circuit court but toward the decision of the agency recognizing that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. If we find the administrative decision is supported by substantial evidence and is not arbitrary, capricious or characterized by an abuse of discretion, we uphold it.

*Franklin* v. *Arkansas Dep't of Human Servs.*, 319 Ark. 468, 472, 892 S.W.2d 262, 264 (1995) (citations omitted). "It is well-settled that we must affirm the decision of an administrative agency if there is substantial evidence of record to support it. Substantial evidence is valid, legal and persuasive evidence; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 353, 609 S.W.2d 23, 25 (1980). "To

have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was 'willful and unreasoning action,' without consideration and with a disregard of the facts or circumstances of the case." *Id.*

We have further written that "the construction of a statute by an administrative agency is not overturned unless it is clearly wrong." *Arkansas Bank & Trust Co.* v. *Douglass*, 318 Ark. 457, 460, 885 S.W.2d 863, 865 (1994) (citation omitted). "However, where the statute is plain and unambiguous, this court will interpret the statute to mean only what it says." *Id.*

Section 28-69-102 of the Arkansas Code Annotated provides in pertinent part:

> (b) A provision in a trust, other than a testamentary trust, which limits the availability of, or provides directly or indirectly for the suspension, termination, or diversion of the principal, income or beneficial interest of either the grantor or the grantor's spouse in the event that the grantor or grantor's spouse should apply for medical assistance or require medical, hospital, or nursing care or long-term custodial, nursing, or medical care shall be void as against the public policy of the State of Arkansas without regard to the irrevocability of the trust or the purpose for which the trust was created and without regard to whether the trust was created pursuant to court order.

> (c) Subsection (b) of this section is remedial in nature and is enacted to prevent individuals otherwise ineligible for medical assistance benefits from making themselves eligible by creating trusts in order to preserve their assets.

Under the plain wording of Ark. Code Ann. § 28-69-102(b), Mrs. Wilson is not disqualified from receiving Medicaid benefits. It is true that Mrs. Wilson's trust prevented the trustee from distributing the principal of the trust until Mrs. Wilson's death, but no provision in the trust "limits the availability of, or provides directly or indirectly for the suspension, termination, or diversion of the principal, income, or beneficial interest of [Mrs. Wilson] in the event that [she] should apply for medical assistance or require medical, hospital, or nursing care or long-term custodial, nursing, or medical care."

■ Likewise, the Department's regulation, Medical Services Policy 3332.2, does not provide that the principal of Mrs. Wilson's trust should be considered in determining whether Mrs. Wilson is qualified for Medicaid benefits. Medical Services Policy 3332.2 #13 provides in pertinent part:

A Medicaid Qualifying Trust is a trust or "similar legal device" established by an individual (or his spouse) who is the beneficiary of the trust and who gives a trustee any discretion for use of the trust funds.

. . .

With a Medicaid Qualifying Trust, consider as a resource to the beneficiary (for eligibility purposes) the maximum amount that a trustee *could* disburse if he exercised his full discretion allowed under the terms of the trust. This amount is deemed available to the individual, whether or not the distribution is actually made.

. . .

(2) *If Appointed Trustee with Full Discretion* — If the client is beneficiary of a trust with an appointed trustee who has full discretion for use of trust funds for the client's benefit, consider the trust assets as a resource to the client.

(3) *If Appointed Trustee With Limited Discretion* — If the appointed trustee has limited discretion, the assets will be considered available to the maximum extent allowed by the trust, whether they are distributed or not.

Examples:

. . .

(b) The trust allows only payment of interest earned on the principal. This will also be considered income in the month available, whether paid or not, and, if not paid or used, will be a resource in the month(s) following.

Medical Services Policy 3332.2 #13. Policy 3332.2 simply does not provide for consideration of the principal of a trust when the trustee is not allowed to make any distributions from the princi-

pal until the death of the grantor, as was done in the present case.

In *Arkansas Dep't of Human Servs.* v. *Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993), we addressed the retroactive application of Ark. Code Ann. § 28-69-102. In *Walters*, the appellee "created a trust for her 'education, support, and general welfare' while living a normal life, but, in order to become artificially impoverished and therefore eligible for Medicaid, she suspended the trustee's power to pay her maintenance if she were placed in a nursing home." *Id.* at 206, 866 S.W.2d at 823. The appellee in *Walters* had intended to preserve her assets for her heirs through the provision providing for the suspension of maintenance. We stated:

> The Department's regulations in effect before the legislation [Ark. Code Ann. § 28-69-102] was enacted did not expressly prohibit a person from artificially impoverishing himself or herself in order to become eligible for Medicaid. The General Assembly, without question, intended to put an end to such contrivances. The language of the Act is clear: Such a provision in a trust is void for determination of eligibility for Medicaid. In another Act of the same 1993 session, the General Assembly declared the public policy of this State to be that Medicaid is to be the payor of last resort. It is only after the individual has exhausted his or her own resources that the taxpayers are to assume the financial burden of an individual's necessary medical expenses. Ark. Code Ann. § 20-77-101 (Supp. 1993).

*Id.* at 208-09, 866 S.W.2d at 825. The court further stated:

> ■ The spirit which promoted the Act, and the mischief sought to be abolished are unmistakably set out. The General Assembly said it intended to declare these trust provisions void and to allow the State to recover any benefits that might have been obtained with the use of such provisions. From this, it is apparent that the legislative intent was to give the Act retroactive effect.

315 Ark. at 209, 866 S.W.2d at 825. We gave Ark. Code Ann. § 28-69-102 retroactive effect to void the trust provision which

provided for suspension of maintenance so that the appellee could qualify for Medicaid.

*Walters* is unlike the case at bar because the grantor in that case structured her trust in such a way that the trustee was to pay her maintenance while she was living a normal life, but the trustee's power to pay the grantor's maintenance was suspended if the grantor was placed in a nursing home. The grantor's obvious goal was to circumvent the regulations which would disqualify her from obtaining Medicaid benefits, thus causing the taxpaying public to maintain her in a nursing home while she preserved her assets for her heirs. In the present case, Mrs. Wilson's trust contains no similar provision. Under the terms of the Idell Wilson Trust the trustee is authorized to distribute the net income from the trust to Mrs. Wilson at such times as the trustee shall determine, but at least quarterly. This power is not altered depending on Mrs. Wilson's medical or long-term care needs. The trustee is not authorized to distribute the principal until Mrs. Wilson dies, at which time the principal will be distributed to the named beneficiaries. Mrs. Wilson has never had access to the principal of the trust.

It does not appear from the trust agreement that Mrs. Wilson's goal in establishing the trust was to force the taxpaying public to maintain her in a nursing home while she preserved her assets for her heirs. Additionally, the record does not support the conclusion that Mrs. Wilson acted surreptitiously in creating the trust. From the evidence in the record, it appears that Mrs. Wilson was not in poor health or in need of long-term care when she executed the trust. Nor does it appear that she was anticipating the need for long term care. Mrs. Wilson established the trust as an estate-planning device for the purpose of avoiding probate costs. The trust was also established as a means of managing Mrs. Wilson's affairs. Mrs. Mooney testified:

> [M]y uncle had just passed away and that what he had told us to do if — he wanted us to sell his things, and they lived out on the farm, and she could not live out on the farm by herself and to sell his things and put it up where she would have an income for the rest of her life to be taken care of.

In *Thomas* v. *Arkansas Dep't of Human Servs.*, 319 Ark.

782, 894 S.W.2d 584 (1995), the Department of Human Services determined that a trust was a Medicaid-qualifying trust. The circuit court affirmed the Department's determination and this court affirmed the circuit court. The pertinent parts of the trust at issue in *Thomas* read as follows:

> 2. *PURPOSE OF TRUST.* This trust is established to meet the special or supplemental needs of Guy Leon Thomas, hereinafter called Primary Beneficiary. It is anticipated that the primary source of Primary Beneficiary's medical, custodial and financial support shall come from governmental assistance, including Medicaid.
>
> 3. *DISPOSITIVE PROVISIONS.*
>
> . . .
>
> (a) During the lifetime of Primary Beneficiary, the Trustee shall pay to or apply for the benefit of Primary Beneficiary, such of the income and principal of the Trust Estate as the Trustee determines in its sole discretion is necessary for the reasonable comfort and happiness of Primary Beneficiary, but not for his food, clothing or shelter. The Trustee shall take into account the availability of government benefits in making expenditures and shall not make expenditures that will disqualify Primary Beneficiary from such benefits.

*Id.* at 785, 894 S.W.2d at 586. In affirming the determination that the trust was a Medicaid qualifying trust, we wrote:

> [T]he public policy behind the Act is absolutely beyond dispute — trusts may not be created and used as devices to sequester resources for the purpose of qualifying individuals otherwise ineligible for Medicaid assistance. Ark. Code Ann. § 28-69-102(b) (Supp. 1993); *see also Arkansas Dep't of Human Servs.* v. *Walters, supra.*

*Id.* at 789, 894 S.W.2d 588. The trust in the present case differs from the trust in *Thomas* in that it does not contain any provisions limiting the distribution of funds in order to assure that the beneficiary qualifies for Medicaid benefits.

The language of the statute is plain and unambiguous. Provisions in trusts that limit the availability of funds should the

grantor apply for medical assistance or require medical or long-term care shall be void as against public policy. No such provision exists in this case. The Department's regulation is plain and unambiguous and does not provide for consideration of the principal of the Idell Wilson Trust in determining whether Mrs. Wilson is eligible for Medicaid assitance.

Affirmed.