## Kirk FILES *v.* ARKANSAS STATE HIGHWAY AND TRANSPORTATION DEPARTMENT

95-952 925 S.W.2d 404

Supreme Court of Arkansas
Opinion delivered July 8, 1996

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Christopher O. Parker*, for appellant.

*Robert L. Wilson* and *Maria L. Schenetzke*, for appellee.

ROBERT L. BROWN, Justice. Appellant Kirk Files appeals the denial by the appellee, Arkansas State Highway and Transportation Department (Department), of his application for a billboard permit on land bordering Interstate Highway 40 in Brinkley. His arguments on appeal are twofold: the Department had no authority to question city zoning for the property in question, and the Department's hearing officer erred in finding that the purpose behind the

city zoning was to permit the erection of billboards. The circuit court affirmed the hearing officer's decision. We affirm the circuit court.

On November 9, 1992, the County Court of Monroe County ordered the annexation of 58.51 acres of land owned by the Duke family into the City of Brinkley. On December 15, 1992, the City of Brinkley approved the annexation and designated the property as C-2, which was Highway Commercial under the city ordinances. On March 1, 1993, Kirk Files, Inc., purchased the land from the Duke family. Kirk Files already owned several billboards on land along I-40 but within the city limits of Brinkley, and on March 11, 1993, he applied to the Highway Department for a permit to place a billboard on the purchased property.

On May 4, 1993, the Department denied Files's application for a billboard permit. The stated reasons for the denial were the sign site was not located on zoned or unzoned commercial or industrial land as defined by Highway Commission regulations, and, secondly, the land was annexed and zoned commercial by the City of Brinkley primarily for the purpose of erecting billboards, which contravened the policy expressed in the Federal and State Highway Beautification laws.

Files contested the Department's denial and requested a hearing. A hearing was held before a designated hearing officer, and Files testified that at the time he purchased the land at issue, it lay within the city limits of Brinkley and was zoned C-2, which under the City Ordinance is a Highway Commercial District. Files implicitly admitted that at the time of purchase the property was not commercially developed, and he stated that he had no present plans to develop the property. Files further testified that he owned other land along I-40 within the city limits of Brinkley and that he had placed billboards on those properties. He stated that none of those tracts had been commercially developed except for one which contained a retirement facility. He testified that he never approached any city official in Brinkley about the annexation and rezoning of the Duke land prior to his purchase.

Larry Long, section head of the Department's Environmental Division — Beautification Section, testified that, although the City of Brinkley had zoned the Duke land C-2, he did not consider that zoning to be valid commercial zoning for purposes of the outdoor

advertising regulations because the land had been zoned solely to allow billboards. Long further stated that federal regulations gave the Department the authority to look to the intent of the zoning to determine if the zoning was valid under the State and Federal Highway Beautification laws.

At a second hearing, Files again testified and stated that one of the pieces of land where he already maintained a billboard was used for agricultural purposes and was rented on a sharecropping basis. At the time the City annexed that land, he said that a manufacturing plant was to be built on the property. The company, though, went bankrupt. Files added that there was no commercial activity on the proposed site for the billboard, nor on any of the property he owned north of I-40 which had billboards. He stated that the proposed site is served by a dirt farm road. All improvements on the land are for agricultural purposes, and there are no utilities provided, except there is access to electricity and telephone services. Files finally stated that he never informed the Dukes that he would purchase the property if it was zoned commercial and that he had nothing to do with the property's annexation and rezoning. As to the land east of his property, Files testified that it was owned by a neighbor, who is also in the billboard business. That land is zoned C-2, and since 1983, it has never been commercially developed.

Jeff Ingram, a Beautification Coordinator for the Department, testified that the denial decision was based on the fact that there had been no commercial development in the annexed area. He also stated that the land adjoining the proposed site was agricultural and the only non-agricultural activity on that land was the placement of billboards. He admitted that the spread of billboards on farm land along I-40 raised a "red flag" that there was a problem with the zoning. The fact that the city had annexed another tract of land and zoned it commercial when the previous annexations had had no subsequent commercial development created a pattern in his opinion. Ingram further testified that he spoke with Brinkley's building inspector, Wayne Young, who informed him that property annexed into the city was normally annexed as residential property and that it was unusual for the Duke/Files property to be annexed and then commercially zoned. According to Ingram, Young told him that the land was zoned commercial because Files had stated that he wanted to place billboards there.

Larry Long retook the stand and agreed with Ingram's assess-

ment of the billboard proliferation. He also admitted that the Department had not certified Brinkley for comprehensive zoning which would have ended the Department's regulation of signs in the area but would still have permitted the Department to question commercial zoning purely for outdoor advertising.

The hearing officer upheld the Department's denial. In doing so, he found that there was no industrial or commercial development on several tracts of land adjacent to I-40 and inside the city limits of Brinkley, including the Files property. He further found that the evidence showed that the City of Brinkley did not want the responsibility of providing dedicated access or utilities to the Files property to encourage its development, and that Files had no plans to construct access or provide utilities on the land or to develop it in any way, either commercially or industrially. The hearing officer concluded by making these principal points:

> 1. The AHTD Environmental Division's Beautification Section acted within its authority to investigate the circumstances surrounding the City of Brinkley's zoning of Mr. Kirk Files's property for purposes of the Highway Beautification program.

> 2. The AHTD Beautification Section had sufficient information and precedent to conclude that the current zoning of this property was for the erection of outdoor advertising and acted properly within their authority under the Highway Beautification Act in denying the application/ permit.

> 3. It is necessary, when considering an outdoor advertising application/permit for approval, for the Department to review the specifics of the contents of the application and the circumstances behind it to determine if it complies with Federal and state law with respect to the placement of outdoor advertising in zoned or unzoned commercial or industrial areas pursuant to the Regulations, and thereby satisfies the purposes and intent of the Highway Beautification Act.

> 4. This property has not been zoned commercial for the purposes of the Highway Beautification program until the zoning procedures outlined in the Cities' zoning ordinances have been satisfied and a final determination of the properties' correct zoning under the Cities' comprehensive zoning

plan has been completed.

Files filed a petition for judicial review of the hearing officer's decision, and the circuit court affirmed that decision.

██ Files now argues on appeal that the hearing officer erred as a matter of law in finding that the Department could look behind Brinkley's zoning designation and examine the motivation behind that zoning for purposes of the Arkansas Highway Beautification Act. The standard of review for decisions of administrative agencies is well-established:

> Our review is not directed toward the circuit court but toward the decision of the agency recognizing that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. If we find the administrative decision is supported by substantial evidence and is not arbitrary, capricious or characterized by an abuse of discretion, we uphold it.

*Arkansas Dep't of Human Servs.* v. *Wilson,* 323 Ark. 151, 155, 913 S.W.2d 783, 785 (1996), quoting *Franklin* v. *Arkansas Dep't of Human Servs.,* 319 Ark. 468, 472, 892 S.W.2d 262, 264 (1995) (citations omitted). The construction of a statute by an administrative agency is not overturned unless it is clearly wrong. *Arkansas Dep't. of Human Servs.* v. *Wilson, supra.* However, where the statute is plain and unambiguous, this court will interpret the statute to mean only what it says. *Id.*

██ We first look to the policies to be accomplished by the State and Federal Highway Beautification laws. The 1965 Federal Highway Beautification Act (23 U.S.C. § 131 *et seq.*) provides for the control of junkyards and billboards to preserve natural beauty and promote public safety and investment in areas adjacent to the interstate and primary highway systems. In furtherance of the Act's objectives, Congress required states receiving federal funds to establish provisions for the effective control of billboards and junkyards or risk jeopardizing ten percent of those funds. *See* 23 U.S.C. § 131(b). The Arkansas Highway Beautification Act, codified at Ark. Code Ann. § 27-74-101 *et seq.* (Repl. 1994), was adopted with that congressional directive in mind. *See Arkansas State Hwy. Comm'n* v. *Roark,* 309 Ark. 265, 828 S.W.2d 843 (1992). The purpose behind the Arkansas Act is likewise to promote the reason-

able, orderly, and effective display of outdoor advertising, to promote the safety and recreational value of public travel, and to preserve natural beauty. *See* Ark. Code Ann. § 27-74-201 (Repl. 1994).

Files relies on Ark. Code Ann. § 27-74-204 (Repl. 1994), and Department regulations as authority for his argument. Section 27-74-204 states in part:

> (a) [N]othing contained in this chapter shall prohibit the erection and maintenance of outdoor advertising signs, displays, and devices consistent with customary use within six hundred sixty feet (660') of the nearest edge of the right-of-way of interstate, primary, and other state highways designated by the State Highway Commission:
>
> (1) Within those areas which are zoned industrial or commercial under authority of the laws of this state....

A Department regulation reenforces this point. *Regulations for Control of Outdoor Advertising,* Agreement III E. (Arkansas State Highway Commission 1972) (cited hereinafter as "*Highway Regulations*"). There is no statutory definition of what comprises industrial or commercial activity.

 Files contends that § 27-74-204(a)(1) is unambiguous and must be interpreted precisely as it reads to give full effect to local zoning actions. While we agree with that stated principle of statutory interpretation, we disagree that the adduced statute decides the issue. This court has held that the Arkansas Highway Beautification Act is remedial in nature and must be broadly construed so to effectuate the purpose sought to be accomplished by its enactment. *Arkansas State Hwy. Comm'n v. Roark, supra.* Moreover, the General Assembly has vested the Highway Commission with regulatory authority to enforce the Arkansas Highway Beautification Act. Ark. Code Ann. §§ 27-74-203, 27-74-211(b) (Repl. 1994). And while the Arkansas statute relied on by Files does not define what constitutes valid "commercial activity" for zoning purposes, Highway regulations do define it as excluding "outdoor advertising structures." *Highway Regulations* I.F.1.

Federal regulations make this same point precisely. Zoning actions of the states will be accepted by the Secretary of Transportation for the purposes of 23 U.S.C. § 131(d), but state actions that

are created *primarily* to permit outdoor advertising structures will not be recognized as valid zoning for outdoor advertising control purposes. C.F.R. § 750.708(b).

State Highway regulations also provide that when a city has adopted a certified comprehensive zoning plan and the Department delegates authority over the control of outdoor advertising to the city because of that comprehensive plan, the Department may continue to retain authority to prohibit invalid outdoor advertising. *Revised Highway Regulations*, I. J. A comprehensive zoning plan has not been implemented for Brinkley. But the policy expressed in this regulation is still another example of the Department's express authority to monitor outdoor advertising.

In *Alper* v. *Nevada*, 97 Nev. 5, 621 P.2d 492 (1980), the Nevada Supreme Court examined local commercial zoning and held that the Federal and State Highway Beautification laws should be interpreted broadly and that an inquiry into the status of billboard areas should not be limited to a review of the face of a zoning ordinance. Rather, the Nevada Supreme Court held that the inquiry should include reference to actual as well as contemplated land uses. In reaching its decision, the Nevada Supreme Court focused on federal regulation 23 C.F.R. 750.708(d), which does not recognize commercial zoning created primarily to allow billboards. *See also United Outdoor Advertising Co., Inc.* v. *Business, Transportation and Housing Agency*, 44 Cal. 3d 242, 746 P.2d 877, 242 Cal. Rptr. 738 (1988) (commercial zoning to permit outdoor advertising must have independent validity or will run afoul of 23 C.F.R. § 750.708(b)); *but see Penn Advertising, Inc.* v. *Department of Transportation*, 147 Pa. 624, 608 A.2d 1115 (Pa. Comwlth. 1992) (state statute providing commercial zoning authority was unambiguous).

■ We agree with the analysis of the Nevada Supreme Court and hold that the Department appropriately examined the propriety of the Brinkley zoning ordinance. Some deference must be given to the Department's interpretation of state and federal regulations in this area. The Department's interpretation of its authority enables it to review limited commercial zoning decisions relating to outdoor advertising to determine validity. This fosters the purposes of the Highway Beautification Act and assures compliance with federal law. The General Assembly certainly contemplated that the Department would regulate outdoor advertising in accordance with state and federal law.

■ Files next contends that there was no substantial evidence to support the hearing officer's finding that the real purpose behind the rezoning was to permit the erection of billboards. It is well-settled that this court must affirm the decision of an administrative agency, if there is substantial evidence of record to support it. *Arkansas Dept. of Human Servs.* v. *Wilson, supra; Partlow* v. *Arkansas State Police Comm'n,* 271 Ark. 351, 609 S.W.2d 23 (1980). Substantial evidence is valid, legal, and persuasive evidence and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Arkansas Dep't of Human Servs.* v. *Wilson, supra; Partlow* v. *Arkansas State Police Comm'n, supra.*

■ Here, there is substantial evidence to support the hearing officer's conclusion that the commercial zoning designation was given for the sole purpose of erecting billboards. To summarize that evidence, land with billboards adjacent to the proposed site had been zoned commercial but otherwise were being used only for agricultural purposes. One of these properties had been zoned commercial in 1982 — ten years prior to the zoning of the proposed site — and still had no commercial development. Files candidly acknowledged that he was in the billboard business and that he had no plans to develop the land at issue. In fact, he owned other commercially zoned lands which were used for agriculture and which contained billboards. No dedicated access or services by the city were planned for the Files property. Finally, there is Jeff Ingram's testimony that he was told by a Brinkley building inspector, Wayne Young, that Files wanted the C-2 Highway Commercial designation so that he could place billboards on the property. This evidence more than supports the hearing officer's conclusion. We hold that the evidence sustaining the hearing officer's decision is substantial.

Because we affirm the hearing officer's decision, we need not address the Department's alternative contention that the City of Brinkley's C-2 classification for the Files property was not a final zoning action.

Affirmed.

DUDLEY, J., not participating.