The Honorable Mike Everett State Senator 412 Broadway Marked Tree, Arkansas 72365
Dear Senator Everett:
This opinion is being issued in response to your recent questions regarding regional solid waste management districts.
You describe a situation in which certain of your constituents own a private solid waste facility that is located in a particular regional solid waste district. The district's solid waste management plan provides that as a part of the district's plan to provide recyclable waste processing capability, the district will evaluate the capability of the existing privately owned facility to handle existing recyclables and to handle the pilot recycling projects described in the plan. You indicate that despite this provision of the district's plan, the district is arranging for grants to local governments to construct solid waste disposal facilities without making any effort to evaluate the capabilities of your constituents' facility.
In light of this situation, you have presented the following questions:
 (1) Does the regional district's solid waste management plan constitute a set of "regulations"?
 (2) Is the regional district required to evaluate the existing private solid waste facility?
 (3) If the district fails to evaluate the existing solid waste facility, are the owners of that facility entitled to a hearing before the Pollution Control and Ecology Commission to contest the making of grants to local governments which would compete with their facility?
 (4) Are other remedies available to require the regional district to evaluate the existing solid waste facility?
 (5) What is the meaning of the phrase "relevant area," as used in A.C.A. § 8-6-609?
RESPONSE
Question 1 — Does the regional district's solid waste management planconstitute a set of "regulations"?
It is my opinion that the regional district's solid waste management plan does not constitute a set of "regulations."[1]
I base this conclusion on the provisions of A.C.A. § 8-6-704, which set forth the powers and duties of regional solid waste district boards. One section of this statute empowers these boards to adopt "regulations,"see A.C.A. § 8-6-704(a)(6), and a separate section empowers them to formulate solid waste management "plans." See A.C.A. § 8-6-704(a)(3). The drafters clearly envisioned "plans" as being something different from "regulations." One significant difference in the two is that "regulations" must be adopted pursuant to the requirements of the Administrative Procedure Act, A.C.A. § 25-15-201 et seq. See A.C.A. §8-6-704(a)(6). In addition, the drafters of this statute appear to have envisioned "regulations" as being procedural in nature. That is, the drafters appear to have required "regulations" for the purpose of providing a procedure to be followed by the district in carrying out its responsibilities. This conclusion is evident from the language of A.C.A. § 8-6-704(a)(6), which provides that the district has the power and duty to adopt such regulations "as are reasonably necessary to assure public notice and participation in any findings or rulings of the boards and to administer the duties of the boards." This language describes regulations that set forth a procedure to be followed by the district, while the language describing the solid waste management plans describes something that is purely substantive in nature: the district is empowered to formulate a plan "for providing adequate solid waste management." A.C.A. § 8-6-704(a)(3).
For these reasons, I conclude that the district's regional solid waste management plan does not constitute a set of "regulations."
Question 2 — Is the regional district required to evaluate the existingprivate solid waste facility?
It is my opinion that the regional district is required to evaluate the existing private solid waste facility.
This requirement emanates from two sources. It emanates first, from the regional district's own solid waste management plan, which requires evaluation of the existing private solid waste facility. Compliance with that plan is mandatory. The mandatory nature of the plan is evident from the fact that the Department of Pollution Control and Ecology is given specific authority to enforce compliance with the plan. The provisions of A.C.A. § 8-6-204(b) state:
 The department is authorized to institute a civil action in any court of competent jurisdiction to accomplish any or all of the following:
 (1) Restrain any violation of, or compel compliance with, the provisions of this subchapter and of any rules, regulations, orders, permits, licenses, or plans issued pursuant thereto.
A.C.A. § 8-6-204(b)(1) (emphasis added). Moreover, a failure to comply with the regional district's plan can give rise to civil penalties. See
A.C.A. § 8-6-204(b)(3) (c). These enforcement and penalty provisions extend to "any person" who violates the plan. The term "person," as used in these provisions, is defined as "any individual, corporation, company, firm, partnership, association, trust, state agency, government instrumentality or agency, institution, county, city, town, municipal authority or trust, venture, or other legal entity, however organized." A.C.A. § 8-6-203(4). This definition is clearly broad enough to encompass regional solid waste management districts themselves, thus requiring them to comply with their own plans, and making the enforcement and penalty provisions applicable to them.
It is my opinion that the "plans" referred to in A.C.A. § 8-6-204 include the solid waste management plans of regional solid waste management districts. I draw this conclusion from the fact that solid waste management systems administered by regional districts are specifically authorized in A.C.A. § 8-6-212(a)(3). Moreover, the regional solid waste management plans that are specifically mandated by A.C.A. § 8-6-717 are a part of the overall legislative scheme that was enacted in 1991 to provide for more efficient state-wide solid waste management. See Acts 1991, Nos. 1057, 752. Similarly, the grant program created by A.C.A. § 8-6-609
is also a part of this overall scheme.
Second, even if the district's plan did not require evaluation of the currently existing private facility, such an evaluation is nevertheless required under state law. Regional district boards are required to engage in an assessment of the district's solid waste needs every four years, or as the Department of Pollution Control and Ecology or the Commission direct. A.C.A. § 8-6-716. The boards are further required to evaluate the district's solid waste needs "on a continual basis" for the purpose of updating the regional needs assessment at least biennially." A.C.A. §8-6-704(a)(2). The regional district board's needs assessment must include the following information:
 (A) An evaluation of the amount of solid waste generated within the district and the amount of remaining disposal capacity, expressed in years, at the solid waste disposal facilities within the district that are permitted under the Arkansas Solid Waste Management Act, § 8-6-201 et seq.;
 (B) An evaluation of the solid waste collection, transportation, and disposal needs of all localities within the district; and
 (C) An evaluation and balancing of the environmental, economic, and other relevant factors which would be implicated by acceptance of solid waste from beyond the boundaries of the district.
A.C.A. § 8-6-716(a)(2).
Each of the above-quoted items inherently requires an evaluation of the existing solid waste facilities in the district. None of these items of information could be accurately reported without such an evaluation having been conducted.
In addition, state law prohibits the provision of grant assistance (under the grant program created by A.C.A. § 8-6-609(c)(2)) for the purchase of mechanical processing equipment or facilities "if existing mechanical processing equipment or facilities adequately serve the relevant area, unless the department determines that the equipment or facility is an indispensable component of an otherwise eligible grant project and would more efficiently serve the relevant area." Clearly, this section gives the department the discretion to allow grants even in areas where a facility is already operating if it determines that a need exists; but the determination of such an additional need could only be made after an evaluation of the capabilities of the existing facility. The provisions of A.C.A. § 8-6-609 do not specify who must conduct such an evaluation; but it clearly must be conducted.
I therefore conclude that the regional district must evaluate the capability of the existing private solid waste facility both under its own plan and regularly under A.C.A. § 8-6-704 and -716. In addition, the existing facility must be evaluated under A.C.A. § 8-6-609 before a grant can be made for the purchase of mechanical processing equipment or facilities.
Question 3 — If the district fails to evaluate the existing solid wastefacility, are the owners of that facility entitled to a hearing beforethe Pollution Control and Ecology Commission to contest the making ofgrants to local governments which would compete with their facility?
It is my opinion that if the district fails to evaluate the existing solid waste facility, and proposes to take any action which would be impacted by such an evaluation, including the provision of a grant, the owners of that facility are entitled to a hearing before the Pollution Control and Ecology Commission.
As I have previously stated, the enforcement and penalty provisions of8-6-204, are, in my opinion, applicable to violations of both the district's plan and to the later solid waste management chapters (such as the grant program created by A.C.A. § 8-6-609). The procedure that is to be utilized in administering these enforcement and penalty provisions is that which is set forth in A.C.A. §§ 8-4-204, -212, and -218 through -229. See A.C.A. § 8-6-204(c). Under these procedural provisions, the Pollution Control and Ecology Commission retains plenary authority to hold hearings and make final determinations regarding any violation of the chapters in question. The right to such a hearing and determination is specifically granted to any party who has been affected by a ruling concerning such a violation. A.C.A. § 8-4-212(b). Moreover, the commission is explicitly authorized under A.C.A. § 8-6-708 to prescribe rules and regulations that will "assure public notice and participation prior to adoption of regional need assessments, finds, or reports made by the boards." In addition, the commission's general rules of procedure require it to hold a hearing, if necessary, to determine the appropriateness of the ruling of the Department of Pollution Control and Ecology regarding the provision of grant monies under A.C.A. § 8-6-609.See Regulation 8, § 2.2.4, Regulations of the Arkansas Department of Pollution Control and Ecology.
Finally, the boards of regional solid waste districts are required to "adopt such rules or regulations pursuant to the Arkansas Administrative Procedure Act, § 25-15-201 et seq., as are reasonably necessary to assure public notice and participation in any findings or rulings of the boards. . . ." A.C.A. § 8-6-704.
Under the above-discussed provisions of state law and the rules and regulations enacted thereunder, an existing solid waste facility is entitled both to participate in the determination of the appropriateness of grants, and to have that determination heard and reviewed by the commission.
Question 4 — Are other remedies available to require the regionaldistrict to evaluate the existing solid waste facility?
In addition to the remedies discussed in response to Question 3, any person who is adversely affected by any "rules, regulations, or orders" issued pursuant to the Solid Waste Management Act (which I have opined would include determinations of the regional solid waste management district boards) is specifically granted a private right of action for the purpose of having his or her grievance addressed. See A.C.A. §8-6-206. Because such an action is, in fact, private, I am not authorized to opine as to the form it should take. Parties who wish to avail themselves of the benefit of this provision should consult their private counsel regarding the matter.
Question 5 — What is the meaning of the phrase "relevant area," as usedin A.C.A. § 8-6-609?
A.C.A. § 8-6-609 states:
 Grant assistance shall not be provided for the purpose of purchasing mechanical processing equipment or facilities if existing mechanical processing equipment or facilities adequately serve the relevant area, unless the department determines that the equipment or facility is an indispensable component of an otherwise eligible grant project and would more efficiently serve the relevant area.
A.C.A. § 8-6-609(c)(2).
The phrase "relevant area," as used in A.C.A. § 8-6-609, is not defined in the statute. This office has consistently taken the position that in the absence of a legislatively — or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition. For the Attorney General to do so would constitute an impermissible violation of the separation of powers principle embodied in Article 4 of the Arkansas Constitution. See, e.g., Ops. Att'y Gen. Nos. 95-400; 93-272. I am therefore unable to respond conclusively to Question 5.
Nevertheless, the rules of statutory interpretation that have been applied by the Arkansas Supreme Court do provide some guidance for interpreting the phrase "relevant area." The Court has held that in the absence of a stated definition (and where there is no ambiguity), it is appropriate to give the words of a statute their commonly understood meanings. Ark. Dept. of Human Serv. v. Wilson, 323 Ark. 151,913 S.W.2d 783 (1996); Caplenger v. Bluebonnet Mill. Co., 322 Ark. 751,911 S.W.2d 586 (1995). The court has also stated that it is appropriate in interpreting statutory language to consider the subject matter and the purpose to be accomplished by the legislation. Henderson v. Fleet Mtg.Co., 319 Ark. 491, 892 S.W.2d 250 (1995).
Applying these rules of interpretation to the phrase "relevant area," as used in A.C.A. § 8-6-609(c)(2), I must conclude that the area that is relevant to an evaluation of an existing facility's capabilities and to the provision of grants for facilities to serve a regional solid waste district is the area that is already served by the existing facility and the area that would be served by the proposed new facility. An evaluation of the existing facility's capabilities clearly would be irrelevant to any other area.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Nevertheless, the regional district's plan must be complied with. See response to Question 2.