The Honorable Louis McJunkin State Representative P.O. Box 223 Springdale, Arkansas 72764
Dear Representative McJunkin:
This official Attorney General opinion is issued in response to your recent question regarding a contract awarded by the city to a city council member.
More specifically, you describe a situation in which an employee of an insurance company submitted a bid (on behalf of his employer) for insurance coverage of the Springdale Water Sewer Commission. This individual's bid on behalf of his employer was the lowest and was therefore chosen for the insurance contract. Subsequently, this employee of the insurance company was elected to the city council. Thereafter, he continued to submit bids on behalf of his employer for the insurance contracts from time to time, and, as the consistently lowest bidder, the company continued to receive the contracts. In 1996, the Water Sewer Commission asked permission from the city council to purchase the White River Rural Water System. This purchase increased the Commission's property, and therefore, the amount of its insurance coverage. The above-described city council member voted in favor of the purchase. It is my understanding that this individual receives commissions on contracts that obtains on behalf of the insurance company.
In light of this situation, you have presented the following questions:
 (1) Is a city council member who also works for an insurance company prohibited from submitting bids on behalf of his employer for the insurance contract to cover the city's Water Sewer Commission?
 (2) If not, was it a conflict of interest for the council member to vote for the acquisition of the White River Rural Association?
RESPONSE
Question 1 — Is a city council member who also works for an insurancecompany prohibited from submitting bids on behalf of his employer for theinsurance contract to cover the city's Water Sewer Commission?
It is my opinion that the answer to this question will require certain factual determinations that this office is not equipped to make. For this reason, I am unable to opine definitively in response to your question. However, I will outline the provisions of law that will govern the situation.
The situation that you have described is governed by A.C.A. § 14-42-107, which states in pertinent part:
 (b)(1) No alderman or council member shall be interested, directly or indirectly, in the profits of any contract for the furnishing of supplies, equipment, or services to the municipality unless the governing body of the city shall have enacted an ordinance specifically permitting aldermen or council members to conduct business with the city and prescribing the extent of this authority.
 (2) The prohibition prescribed in this subsection shall not apply to contracts for the furnishing of supplies, equipment, or services to be performed for a municipality by a corporation in which no alderman or council member holds any executive or managerial office, or by a corporation in which a controlling interest is held by stockholders who are not aldermen or council members.
A.C.A. § 14-42-107(b).
The above-quoted statute clearly prohibits council members from profiting from contracts granted by the city. However, it limits the prohibition to contracts that are to be performed by companies in which the council member holds an executive or managerial office, or in which the council member or council members own controlling stock.[1] The question of whether any particular council member holds an executive or managerial office or owns controlling stock in a company with which the city has a contract is a question of fact that will turn upon all of the circumstances surrounding the council member's position in the company in question.
You have indicated that the council member about whom you have inquired is given the title of "vice-president" of the company which provides the insurance coverage for the Water Sewer Commission, but that the title is based upon the amount of insurance that this individual sells and does not carry any managerial responsibilities. You further indicate that the council member owns no stock in the company. Although these facts may weigh in favor of a conclusion that this individual falls within the exception to the prohibition, as set forth in Section (b)(2) of the statute, a conclusion regarding this matter could not be drawn until a trier of fact considered the individual's specific duties with the company, and determined whether the position requiring the performance of those duties constitutes an "executive" or "managerial" office with the company.
It should be noted that the terms "executive" and "managerial" are not defined in the statute. In the absence of a statutory definition, and in the absence of an ambiguity, the terms should be given their commonly understood meanings. See Ark. Dept. of Human Serv. v. Wilson,323 Ark. 151, 913 S.W.2d 783 (1996); Caplenger v. Bluebonnet Mill. Co.,322 Ark. 751, 911 S.W.2d 586 (1995). The American Heritage Dictionary
defines the term "executive" as "[o]f, pertaining to, capable of, or suited for carrying out or executing." It defines the term "managerial" as "[o]f, pertaining to, or characteristic of a manager or management." The term "management," in turn, is defined as "[t]he act, manner, or practice of managing, supervising, or controlling." These definitions are certainly broad enough to encompass the duties performed on behalf of the insurance company by the council member about whom you have inquired. It might also be noted that the title of "Vice-President" may create a presumption that this individual's duties are executive and managerial in nature.
To summarize, then, it is my opinion that the situation about which you have inquired is governed by A.C.A. § 14-42-107, and that whether the prohibition of that statute would apply is a question of fact that must be determined on the basis of all of the relevant circumstances.
Question 2 — If not, was it a conflict of interest for the council memberto vote for the acquisition of the White River Rural Association?
It is my opinion that even if the council member was not prohibited by law from bidding on behalf of his employer for the contract of insurance coverage for the Water Sewer Commission, his voting for the acquisition of the White River Rural Association nevertheless created an impermissible conflict of interest.
Public officials such as city council members, are prohibited from using their public positions to obtain personal benefits. This prohibition is set forth in A.C.A. § 21-8-304, which states:
 (a) No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
A.C.A. § 21-8-304(a).
Because the acquisition of the White River Rural Association would increase the amount of insurance covereage needed from the individual council member's employer, the acquisition would result in the council member receiving an increased commission on the contract. His vote on the acquisition, therefore, constituted the use of his public position to obtain a personal benefit, in violation of A.C.A. § 21-8-304(a). Accordingly, I must conclude that his vote on this acquisition created an inappropriate conflict of interest.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] This office has previously construed the prohibition of § (b)(2) as being disjunctive in nature. That is, if either of the conditions mentioned therein exist (i.e., if the council member holds an executive or managerial office with the company in question, or if a controlling interest in that company is held by council members), then the prohibition of § (b)(1) will apply. See Op. Att'y Gen. No. 90-132.