LAMAR OUTDOOR ADVERTISING *v.* ARKANSAS HIGHWAY AND TRANSPORTATION DEPARTMENT

CA 03-411 184 S.W.3d 461

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered May 26, 2004

282

*George E. Pike, Jr.*, for appellant.

*Robert L. Wilson*, Chief Counsel; and *Bruce P. Hurlbut*, Staff Attorney, for appellee.

OLLY NEAL, Judge. Lamar Outdoor Advertising appeals from the State Highway Commission's denial of its application to erect a billboard along Highway 67/167 near Jacksonville.[1] Lamar argues that the Commission erred in denying the application and that, when the Commission's decision was appealed to Pulaski County Circuit Court, the court erred in failing to conduct a *de novo* hearing. We affirm in all respects.

The statutes and regulations pertinent to this case were promulgated pursuant to the federal and state Highway Beautification Acts. Congress passed the federal Highway Beautification Act in 1965 for the purpose of protecting the public investment in highways, promoting the safety and recreational value of public travel, and preserving natural beauty. *See* 23 U.S.C. § 131(a) (2001); *Files v. Arkansas State Highway & Transp. Dep't*, 325 Ark. 291, 925 S.W.2d 404 (1996). The Act required the states to, among other things, effectively control the erection of outdoor-advertising devices within 660 feet of interstate and primary highway rights-of-way or suffer a reduction in federal-aid highway funds. *See* 23 U.S.C. § 131(b) (2001); *Yarbrough v. Arkansas State Highway Comm'n*, 260 Ark. 161, 539 S.W.2d 419 (1976). Under 23 U.S.C. § 131(d), certain outdoor signs could be erected within the 660-foot parameter in "unzoned commercial or industrial areas" as determined by agreement between each state and the federal Secretary of Transportation.

The Arkansas Highway Beautification Act, like the Federal Act, permits outdoor-advertising signs within the 660-foot parameter "within those unzoned commercial or industrial areas which may be determined by agreement between the commission and the United States Secretary of Transportation." *See* Ark. Code Ann. § 27-74-204(a)(2) (Repl. 1994). The Arkansas State Highway

---

[1] In three prior appeals, we affirmed the Commission's denial of Lamar's applications to erect billboards at other locations. *Lamar Outdoor Advertising, Inc. v. Arkansas State Highway & Transp. Dep't*, 84 Ark. App. 72, 133 S.W.3d 412 (2003); *Lamar Outdoor Advertising, Inc. v. Arkansas State Highway & Transp. Dep't*, No. CA03-412 (Ark. App., May 5, 2004); and *Lamar Outdoor Advertising, Inc. v. Arkansas State·Highway & Transp. Dep't*, No. CA03-413 (Ark. App., May 5, 2004).

Commission entered into an agreement with the federal Secretary of Transportation in 1972 that resulted in the adoption of the *Regulations For Control Of Outdoor Advertising On Arkansas Highways.* Regulation 1(H)(2) defines an unzoned commercial, business, or industrial area — where billboards are permitted — as follows:

> the land occupied by the regularly used building, parking lot, and storage or processing area of a commercial, business, or industrial activity, and that land within 600 feet thereof on both sides of the highway. The unzoned land shall not include:
>
> . . . .
>
> 2. Land predominantly used for residential purposes.

It was this regulation that formed the basis for the Commission's denial of Lamar's application. The Commission determined that the site where Lamar proposed to erect a billboard did not qualify as an "unzoned commercial area" because it was predominantly used for residential purposes.

The evidence at the administrative hearing revealed that the proposed site was owned by a commercial business, Andrews Paving Company. Jeff Ingram, the Commission's Highway Beautification Coordinator, inspected the site and determined that, within the area 660 feet from the highway right-of-way and 600 feet along either side of the commercial lot, there were two residences and parts of the yards of two others. Ingram also discovered that the entire area had been platted as part of a residential subdivision in 1967, although there had been no development in the area since 1979 due to flooding problems. Ingram further located a Bill of Assurance filed with the subdivision plat, which provided that no lot would be used except for residential purposes; that no signs could be displayed on any lot, with the exception of certain small or specialized signs; that the Bill was binding for thirty years from its recordation date; and that it would be automatically renewed for successive ten-year periods unless changed by a majority of the landowners.[2]

Following Ingram's investigation, the Commission denied Lamar's application on the ground that the area was predominantly residential and thus did not meet the definition of an unzoned

---

[2] The record does not reveal how the Andrews commercial lot came to be placed in this subdivision.

commercial area. Thereafter, a hearing was held before an administrative officer. Both Ingram and Larry Long, who is the head of the Commission's Beautification Section, testified that the Commission operated under a rule of thumb that if there were more houses than businesses in an area, the area would be considered predominantly residential. Applying that rule, they determined that the subject area was predominantly residential because it had a ratio of four residences to one business.

To counter the Commission's evidence, Lamar presented an opinion letter prepared by Robert Holloway, a civil and environmental designer. Holloway stated that, given the flooding problems in the area, the subdivision could not be further developed residentially.

The administrative officer denied Lamar's application, ruling that the proposed billboard site was in an area that was predominantly residential and therefore did not qualify as an unzoned commercial area. Lamar appealed the administrative finding to the Pulaski County Circuit Court, where it was affirmed. Appeal was then taken to this court by the filing of a timely notice of appeal.

Lamar argues first, as it did at the administrative hearing, that the Commission misinterpreted Ark. Code Ann. § 27-74-204(a) and Regulation 1(H)(2) to mean that a billboard could not be placed on a commercial lot if the area surrounding the lot was predominantly residential. Lamar contends that, so long as the billboard is to be placed on the commercial lot rather than on one of the surrounding lots, the residential character of the surrounding lots should not be considered. We disagree.

■■ Issues of statutory construction are reviewed *de novo*. *See Holland v. Lefler*, 80 Ark. App. 316, 95 S.W.3d 815 (2003). However, an administrative agency's interpretation of statutes or its own rules and regulations will not be disregarded unless clearly wrong. *See ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997); *Arkansas Dep't of Human Servs. v. Hillsboro Manor Nursing Home, Inc.*, 304 Ark. 476, 803 S.W.2d 891 (1991). The Arkansas Highway Beautification Act is remedial in nature and must be broadly construed to effectuate the purpose sought to be accomplished by its enactment. *Files, supra*.

■■ Arkansas Code Annotated section 27-74-204(a) and Regulation 1(H)(2) recognize that billboards may be placed in an unzoned commercial area, and the regulation defines that area as

the land occupied by the commercial building and its parking lot, storage, or processing area, plus the land within 600 feet thereof on both sides of the highway.[3] It is within this entire area that the law generally permits a billboard to be erected. This is made clear by an illustration in the *Regulations For Control Of Outdoor Advertising On Arkansas Highways* that depicts an "unzoned commercial area" as being a box, measuring 600 feet on either side of the business and 660 feet back from the highway. The illustration then describes the area within the box as "where signs will be legal." Under the terms of Regulation 1(H)(2), however, an area is precluded from being classified as unzoned commercial if it includes land predominantly used for residential purposes. Contrary to Lamar's proposed construction, the statute and regulation do not require a different analysis if the billboard is placed directly on the commercial lot as opposed to a lot in the surrounding area; it is the character of the entire "boxed" area that is to be considered, regardless of where the billboard is placed in that area.

■ Given the purposes of the state and federal Highway Beautification Acts, it is reasonable to conclude that the Acts intended to prohibit billboards in areas where, although a commercial use exists, there also exists a predominantly residential use. To interpret the statute and regulation as Lamar suggests would mean that a billboard could be placed on a single unzoned commercial lot even if that lot were closely surrounded by residential use, which would be at odds with the purpose of the Acts. We therefore uphold the Commission's interpretation.

■ Lamar argues next that, even if we interpret the statute and regulation as the Commission would have it, the Commission erred in determining that the area in question was predominantly used for residential purposes. Unlike the previous issue, which involved a *de novo* review of statutory interpretation, this issue involves a factual finding by the Commission. Thus, we employ the standard of review required by the Administrative Procedure Act, as we did in *Lamar Outdoor Advertising, Inc. v. Arkansas State Highway & Transp. Dep't*, 84 Ark. App. 72, 133 S.W.3d 412 (2003). There, we recognized that our review is directed not toward the circuit court but toward the decision of the agency because

---

[3] Other parts of the regulations clarify that "on both sides of the highway" means on both sides of the business along the highway.

administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. *Id.* We also observed that our review of administrative decisions is limited in scope, and administrative decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.*

■■ Substantial evidence is evidence that is valid, legal, and persuasive and that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Williams v. Arkansas State Bd. of Physical Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). The question is not whether the evidence would have supported a contrary finding, but whether it would support the finding that was made. *See id.* The appellant has the burden of proving that there is an absence of substantial evidence. *See id.* To establish an absence of substantial evidence to support the decision the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.*

■ An administrative decision should be reversed as arbitrary and capricious only when it is not supportable on any rational basis, not simply because the reviewing court would have acted differently. *Moore v. King*, 328 Ark. 639, 945 S.W.2d 358 (1997). The party challenging the agency's action must prove that such action was willful and unreasonable, without consideration, and with a disregard of the facts or circumstances of the case. *Id.*

■ Given the strict standard of review and the great deference accorded to an administrative agency's findings, we affirm the Commission's action in this case. The area in question has more residential use than commercial use, there being two full residences and parts of two others as opposed to one commercial lot. A use is "predominate" if it is "most common or conspicuous." *American Heritage Dictionary* at 976 (2d ed. 1985). Further, the lots in the area are platted for residential use and served by a Bill of Assurance that restricts the area to residential use. Thus, we cannot say that the Commission had no reasonable basis for its denial of Lamar's application or that its action was willful and unreasonable in disregard of the facts and circumstances. Certainly, some evidence was presented that would support a contrary finding, in particular the fact that, for the last twenty-five years, the subdivi-

sion has not been capable of supporting residential development due to flooding problems. However, our inquiry on appeal is not whether the evidence would have supported a contrary finding, but whether it supports the finding that was made. *Williams v. Arkansas State Bd. of Physical Therapy, supra.* The evidence in this case supports the finding that was made by the Commission, and we therefore affirm.

 Before leaving this point, we discuss a matter that is troublesome to the dissenting judges and gives us some concern as well. In Act 735 of 1979, the legislature defined the term "land predominantly used for residential purposes" as follows:

> (a) It is the legislative intent and purpose of this section to specifi-cally define a certain term used in the agreement entered into between the State Highway Commission and the Secretary of Transportation pursuant to the authority granted in this chapter, as amended, particularly the term "land predominantly used for resi-dential purposes" as that term is used in enumerating exclusions in the definition of "unzoned commercial, business, or industrial areas," in order to clarify the terms of agreement and to enable the commission to more effectively and efficiently and uniformly ad-minister the provisions of this chapter, as implemented by the agreement entered into between the commission and the Secretary of Transportation.

> (b) As used in the agreement entered into between the commission and the Secretary of Transportation pursuant to the provisions of this chapter, *"land predominantly used for residential purposes" means only those tracts of land within an unzoned commercial, business, or industrial area on a primary or interstate highway which are occupied by a building regularly and principally used as a residence and those tracts of land adjacent to those residential tracts which are under the same ownership as the residential tracts and which are actively used and maintained for residential purposes.*

Ark. Code Ann. § 27-74-210 (Repl. 1994) (emphasis added). Lamar argues that we should apply this definition in determining whether the land in question was being used for predominantly residential purposes. However, Lamar did not argue the application of this statute to the Commission, although the statute was cited in the briefs filed in circuit court. It is an appellant's duty to raise an argument at the Commission level before raising it on appeal. *See Arkansas Health*

*Servs. Agency v. Desiderata*, 331 Ark. 144, 958 S.W.2d 7 (1998). In *Desiderata*, the supreme court declined to consider a constitutional argument that the appellant raised for the first time in the circuit court proceeding. On numerous other occasions, the supreme court has held that it will not reach arguments, either constitutional or otherwise, that were not made at the administrative level. *See, e.g., Franklin v. Arkansas Dep't of Human Servs.*, 319 Ark. 468, 892 S.W.2d 262 (1995) (declining to review appellant's arguments that she was denied due process and her right to a hearing under Ark. Code Ann. § 25-15-208 where such arguments were not made to the administrative tribunal); *Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992) (declining to reach "several arguments" that were not raised before the Board); *Alcoholic Bev. Control Div. v. Barnett*, 285 Ark. 189, 685 S.W.2d 511 (1985) (declining to reach a challenge to the timing of two local option elections because the argument was not raised before the Board). The rationale behind this rule is that, if the appellate court were to set aside an administrative determination on a ground not presented to the agency, it would usurp the agency's function and deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its action. *See Franklin, supra; Wright v. Arkansas State Plant Bd., supra.*

In the present case, the Commission was never given the opportunity to consider and rule upon the application of section 27-74-210. We note that an agency ruling would have been particularly important in this case because there is some question about the validity of the statute. Arkansas Code Annotated section 27-74-211(b) states that the definition of an unzoned commercial area "shall be determined by an agreement between the commission and the Secretary of Transportation." Thus, there is a question regarding whether legislative action was the proper means of defining an unzoned commercial area. In any event, Lamar did not argue the application of the statute to the Commission, and the Commission did not rule on its application. Therefore, as the supreme court has done in like cases, we will not address Lamar's argument for the first time on appeal.

The remaining issue is whether the circuit court erred in failing to conduct a *de novo* hearing upon an appeal from the Commission. This issue was fully developed and resolved in Lamar's first appeal, where we held that a *de novo* hearing was not required under these circumstances. *See Lamar Outdoor Advertising,*

*Inc. v. Arkansas State Highway & Transp. Dep't, supra.* We therefore affirm that point without further discussion.

Affirmed.

GLADWIN, BIRD, and CRABTREE, JJ., agree.

ROBBINS and ROAF, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I agree with the majority's opinion to the extent that it affirms the decision of the Pulaski County Circuit Court, which denied appellant a de novo judicial hearing on all issues that had been addressed by the State Highway Commission. I disagree, however, that the Commission's construction of the Arkansas Highway Beautification Act and regulations promulgated thereunder should have been affirmed. The issue, the only issue, before the Commission was whether the proposed site of appellant's billboard was on "land predominantly used for residential purposes." The Beautification Act permits advertising signs within a 660-foot parameter with "unzoned commercial or industrial areas" as may be determined by agreement between the Commission and the United States Secretary of Transportation. Ark. Code Ann. § 27-74-204(a)(2) (Repl. 1994). Regulation 1(H)(2), which was promulgated thereafter, defined an unzoned commercial, business, or industrial area — where billboards are permitted — as follows:

> The land occupied by the regularly used building, parking lot, and storage or processing area of a commercial, business, or industrial activity, and that land within 600 feet thereof on both sides of the highway. The unzoned land shall not include:
>
> 2. Land predominantly used for residential purposes.

The regulation did not, however, define the term "land predominantly used for residential purposes."

The Commission construed the Act and this regulation to mean that land is predominantly used for residential purposes if there are two residential properties and the partial yards of two residential properties within 600 feet of the proposed qualifying business, and the proposed site is on a lot within a residential subdivision where billboard structures are prohibited.

As noted by the majority, issues of statutory construction are reviewed de novo. While deference is given to the construction given by the agency charged with its execution, we are not

absolutely bound by the agency's construction. Especially, as in the case at bar, where the legislative intent on an issue has been articulated so clearly, to-wit:

(a) It is the legislative intent and purpose of this section to specifically define a certain term . . . .

(b) As used in the agreement entered into between the commission and the Secretary of Transportation pursuant to the provisions of this chapter, "land predominantly used for residential purposes" means only those tracts of land within an unzoned commercial, business, or industrial area on a primary or interstate highway which are occupied by a building regularly and principally used as a residence and those tracts of land adjacent to those residential tracts which are under the same ownership as the residential tracts and which are actively used and maintained for residential purposes.

Ark. Code Ann. § 27-74-210 (Repl. 1994). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Bush v. State*, 338 Ark. 772, 2 S.W.3d 761 (1999). Statutes relating to the same subject must be construed together and in harmony, if possible. *Id.* With this construction aid, application of the Beautification Act and regulations permit only one conclusion, *i.e.*, that appellant's proposed sign location was not on "land predominantly used for residential purposes."

Reference to statutes and precedential case law in the performance of our de novo appellate review of statutory construction does not violate the prohibition of raising new issues on appeal. We routinely cite authorities in our opinions that were neither cited to the trial court nor many times in the briefs before us. While the appellant and the Commission should have mentioned this 1979 amendment to the Beautification Act, we are not foreclosed on our de novo review of statutory construction to address it. I would do so and reverse the trial court and Commission.

I am authorized to state that Judge Roaf joins in this dissent.